Travis C. TILLER, Appellant,

v.

Guadalupe T. MARTINEZ, Appellee.

No. 04–98–00121–CV.

Court of Appeals of Texas,
San Antonio.

May 29, 1998.

Rehearing Overruled June 23, 1998.

J.G. Adami, Jr., Warburton, Adami, McNeill & Paisley, P.C., Alice, for Appellant.

Jaime Omar Garza, Law Offices of Jaime Omar Garza, Alice, for Appellee.

Before LÓPEZ, STONE and DUNCAN, JJ.

## OPINION

STONE, Justice.

### FACTUAL AND PROCEDURAL BACKGROUND

On May 3, 1997, the Alice Independent School Board conducted an election for three places on its Board of Trustees. After final canvass conducted on May 13, 1997, Travis Tiller was declared the winner of Place 3. Tiller secured the seat by 15 votes, with 1,897 votes in his favor and 1,882 votes in favor of his opponent, Guadalupe Martinez.

On June 11, 1997, Martinez filed an original petition contesting the election results in the Martinez–Tiller race, but erroneously referred to it as the Place 2 race rather than the Place 3 race. Tiller filed an answer, which included a plea to the jurisdiction due to the incorrect statement regarding the specific place contested. On July 17, 1997, Martinez filed a supplemental petition correcting the error and stating that he challenged the election results for Place 3. The case proceeded to trial before Judge Fernando Mancias. At trial, Martinez contested the rejection of 108 mail-in ballots prior to

the election. Martinez sought to have these ballots validated and counted by the trial court and the election results overturned. After both parties rested, Tiller argued generally that an additional 31 mail-in ballots should be invalidated because the ballots were sent to a post office box. Tiller offered these ballots into evidence during the presentation of his defense. The trial court held that 28 of the 108 rejected mail-in ballots were valid and should have been counted, and further held that Tiller failed to meet his burden of proof to find invalid the 31 counted ballots contested by him. Of the 28 validated mail-in ballots, 25 were in favor of Martinez, 2 were in favor of Tiller, and one was not in either party's favor. As a result, the trial court overturned the election results, with Martinez winning by a margin of 8 votes. Tiller appeals the trial court's judgment in five points of error.

### ARGUMENT AND AUTHORITIES

■ To overturn an election, the contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results. *See Alvarez v. Espinoza,* 844 S.W.2d 238, 242 (Tex.App.—San Antonio 1992, writ dism'd w.o.j.); *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.). To prove that the outcome was materially affected, the contestant must show that illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes, or engaged in other fraud, illegal conduct, or mistake. TEX. ELEC.CODE ANN. § 221.003 (Vernon 1986); *Alvarez,* 844 S.W.2d at 242.

■ If the contestant meets his burden of proof and the trial court can ascertain the true outcome of the election, it shall declare the outcome. However, if the trial court cannot ascertain the true outcome of the election, it must declare the election void. TEX. ELEC.CODE ANN. § 221.012 (Vernon 1986). The standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion. *Guerra v. Garza,* 865 S.W.2d at 576; *Green v. Reyes,* 836 S.W.2d 203, 208 (Tex.App.—Houston [14th Dist.] 1992, no

writ); *Guerra v. Pena,* 406 S.W.2d 769, 773 (Tex.Civ.App.—San Antonio 1966, no writ).

### Trial Court's Jurisdiction

■ In his first point of error, Tiller contends that Martinez's supplemental petition was untimely to challenge the election results of Place 3 because it was not filed until July 11, 1997, outside the statutory 30–day period. Although Tiller concedes that Martinez's original petition filed on June 11, 1997, was within the 30–day period, he contends that such filing was ineffective to challenge the election results of Place 3 because the petition stated that Martinez contested the election results of Place 2. Tiller contends that the supplementation of the original petition did not cure the nonwaivable jurisdictional time constraint because "election contests have been held to not be 'ordinary civil cases.'"

■ A contestant must file the petition in an election contest no later than the 30th day after the date the official result of the contested election is determined. TEX. ELEC. CODE ANN. § 232.008(b) (Vernon 1986). The 30–day limit is jurisdictional and is nonwaivable. *Jordan v. Norman,* 711 S.W.2d 358, 359 (Tex.App.—Beaumont 1986, no writ).

■ Except as otherwise provided, the rules governing civil suits in the district court apply to an election contest in the district court, including those rules pertaining to the amendments of pleadings. TEX. ELEC.CODE ANN. § 231.002 (Vernon 1986); *Bailey v. Fly,* 97 Tex. 425, 79 S.W. 299, 300–01 (1904). "Election contest pleadings may be amended like other cases although the Election Code provides a limitation of this right and of continuances in primary elections and elections requiring a run-off." David B. Brooks, COUNTY AND SPECIAL DISTRICT LAW § 11.23 (Tex.Prac.1986). Amendments, responses, and other like pleadings may be filed with the clerk at any time the filing of such instruments does not operate as a surprise to the opposing party. TEX.R. CIV. P. 63. A trial court has no discretion to refuse an amendment or supplementation under Rule 63 unless the opposing party presents evidence of surprise or prejudice, or an

amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *See id.; Hardin v. Hardin,* 597 S.W.2d 347, 350–51 (Tex.1980).

Although the original petition incorrectly stated that Martinez contested the election outcome of Place 2, it named Martinez as the contestant and Tiller as the contestee and stated that the two opposed one another in the School Board election. Martinez's original petition pleaded facts sufficient to give notice of the grounds of his election contest, and the typographical error was cured by a subsequent supplemental petition filed within days of Tiller's plea to the jurisdiction of the court. Because the petition stated the grounds upon which Martinez contested the election and pleaded sufficient facts to give Tiller notice of such, it was sufficient to invoke the jurisdiction of the district court. The trial court did not err by denying Tiller's motion to dismiss for want of jurisdiction. Tiller's first point of error is overruled.

### Introduction of Ballots into Evidence

■ Tiller argues that the trial court erred by denying his motion for directed verdict because Martinez failed to introduce into evidence the actual ballots. Tiller contends that without the actual ballots, the trial court could not have determined the true outcome of the election, and therefore it had no basis upon which it could overturn the election. Tiller contends that by failing to introduce the ballots into evidence, Martinez failed to meet his burden of proof that the election outcome was not the true outcome.

■ Tiller misconstrues Martinez's burden of proof to overturn the election by basing Martinez's ability to meet his burden solely on the introduction of the ballots themselves. An election may not be set aside without proof that the alleged violation of the Election Code materially affected the result. *See Alvarez,* 844 S.W.2d at 242. To overturn the election, Martinez was required to show that the outcome was not the true outcome either because illegal votes were counted, or because an election official prevented eligible

voters from voting, failed to count legal votes, or engaged in other fraud or illegal conduct or made a mistake. Tex. Elec.Code Ann. § 221.003; *Alvarez,* 844 S.W.2d at 242. The tribunal has wide discretion to decide all matters necessary or proper to determine the contest's outcome, including whether the ends of justice require the reopening of ballot boxes and recounting the vote. *See Slusher v. Streater,* 896 S.W.2d 239, 242 (Tex. App.—Houston [1st Dist.] 1995, no writ).

Because Martinez was not required to introduce the actual ballots to satisfy his burden of proof, Tiller's argument fails. Tiller's second point of error is overruled.

### Validation of Mail-in Ballots

Tiller's third point of error focuses on the 28 mail-in ballots validated and counted by the trial court.[1] Tiller argues that Martinez failed to meet his burden of proof because Martinez failed to show that each of the voters was legally qualified in every respect and failed to show that each of the voters was eligible to vote by mail or that the ballots were properly cast. Tiller attacks the votes individually to establish the court's error in counting each.

Relying on *Alvarez,* 844 S.W.2d at 244–45, Martinez counters with argument that he was not required to prove the legal qualifications of each voter when the ballots were rejected for reasons unrelated to the voters' qualifications. Because all of the ballots were rejected for reasons other than the voters' qualifications, Martinez contends that he was not required to show that the voters were legally qualified to vote in every respect. Martinez argues that implicit in the application process to vote early by mail is clear and convincing evidence that each voter is legally qualified to vote.

When the contestant contends that the election judge rejected votes that should have been accepted, it has long been the rule to presume that each of the rejected ballots was cast by an illegal voter. *See Garza v. Salinas,* 434 S.W.2d 153, 154–55 (Tex.Civ. App.—San Antonio 1968, no writ); *Guerra v.*

---

**1.** Tiller challenges 26 of the 28 validated ballots, including the two in his favor. This court's review of Tiller's challenges will focus only on the 24 validated ballots that were cast in favor of Martinez and are challenged on appeal.

*Pena*, 406 S.W.2d at 773–75; *Guerra v. Ramirez*, 364 S.W.2d 720, 723–24 (Tex.Civ. App.—San Antonio 1963, writ dism'd); *Guerra v. Ramirez*, 351 S.W.2d 272, 275 (Tex.Civ. App.—San Antonio 1961, writ dism'd). Accordingly, an election judge is presumed to have acted properly in receiving or rejecting a ballot. *Alvarez*, 844 S.W.2d at 244. The contestant has the heavy burden of overcoming this presumption. *Id.*

Under the same precedent it has been held that to overcome the presumption of correctness of an election judge's ruling, the contestant must show by clear and satisfactory evidence that each of the voters of rejected ballots was a legally qualified voter [2] in every respect and that each of said rejected ballots was properly cast. *See, e.g., Garza*, 434 S.W.2d at 154; *Guerra v. Pena*, 406 S.W.2d at 773–75; *Guerra v. Ramirez*, 364 S.W.2d at 723–24. However, in *Alvarez*, this court modified this rule and held that "when votes were rejected for a reason having nothing to do with the voters' qualifications, the contestant need not show the qualifications of the rejected voters. . . ." *Alvarez*, 844 S.W.2d at 244. The court went on to hold that in the event a contestant contends that ballots were improperly rejected on the basis that the signature on the ballot application did not match the signature on the carrier envelope, the contestant must show by clear and satisfactory evidence that the election board erred. *Id.* at 244–45.

■ The established rule to overcome the presumed correctness of the election judge's determinations survives *Alvarez*. The contestant must show that: (1) the voter was legally qualified to vote, and (2) the ballot was properly cast. *See id.* at 244; *Garza*, 434 S.W.2d at 154–55. *Alvarez* merely excepts proof of the first part of the test in the event the ballot was rejected for a reason unrelated to the voters' qualifications, i.e.

signature discrepancy. *Alvarez*, 844 S.W.2d at 244. However, *Alvarez* maintains the second part of the established rule by requiring the contestant to show that the election board erred by rejecting the ballot, i.e. that the ballot was properly cast. *See id.* at 244–45.

The second prong of the burden-of-proof test is the heart of Tiller's challenge to each of the 24 validated ballots. Tiller contends that Martinez failed to satisfy his burden of proof to validate the rejected ballots because Martinez failed to show that the election board erred by rejecting the ballots. Accordingly, Tiller contends that the trial court erred by validating the 24 ballots. Tiller challenges the 24 validated ballots on the basis of 4 irregularities: (1) violation of statutory procedures when the voter is assisted; (2) ineligibility to vote early by mail; (3) signature discrepancy; and (4) missing residence affidavit.

Section 87.041 of the Election Code outlines the criteria upon which the election board may accept a mailed absentee ballot. Among other requirements, a ballot may be accepted only if the carrier envelope certificate is properly executed and the voter's signature on the ballot application and the voter's signature on the carrier envelope certificate are both determined to be executed by the voter, unless either is signed by a witness. TEX. ELEC.CODE ANN. § 87.041 (Vernon Supp.1998). If a ballot application is signed for the voter by a witness, the witness must sign the document in the appropriate space and indicate their relationship to the voter, if any. *Id.* at § 84.003. An absentee voter is eligible for assistance in marking the ballot if the voter cannot execute the ballot due to a physical disability that renders the voter unable to write or see, or the voter is unable to read the language in which the ballot is written. *Id.* at §§ 64.031, 86.010(a) (Vernon 1986 & Vernon Supp.1998).[3] If as-

---

**2.** "Qualified voter" means a person who: (1) is 18 years or older; (2) is a United States citizen; (3) has not been determined to be mentally incompetent; (4) has not been finally convicted of a felony, or if so has satisfied enumerated requirements; (5) is a resident of this state; and (6) is a registered voter. TEX. ELEC.CODE ANN. § 11.002 (Vernon Supp.1998); *see Alvarez*, 844 S.W.2d at 244.

**3.** While sections 84.003 and 87.041 use the term "witness," the corresponding sections use the term "assistant." *See* §§ 64.031, 64.037, 86.010. It is assumed that the two terms are synonymous.

sistance is provided to a voter ineligible for assistance, that ballot may not be counted. *Id.* at §§ 64.037, 86.010(d) (Vernon 1986 & Vernon Supp.1998). A person must sign the carrier envelope certificate if he assists the voter in any manner during the execution of the ballot. *Id.* at § 86.013(c) (Vernon Supp. 1998). The assistant may not simply sign the voter's name. *Alvarez,* 844 S.W.2d at 245. If the person assisting the voter fails to sign the carrier envelope certificate, the ballot shall not be counted. *See* TEX. ELEC.CODE ANN. §§ 86.005, 86.010(b), 86.012, 86.013(c) (Vernon Supp.1998). The assistant must also take an oath prescribed in § 64.034 and include this signed oath in the carrier envelope. *Id.* at §§ 86.010(c), 86.013(f). However, if the assistant fails to take the required oath or fails to include the signed oath in the carrier envelope, the vote shall still be counted. *See id.* at § 86.010(d). If the voter is assisted in any manner by a person not allowed to assist the voter, the ballot may not be counted. *Id.* at §§ 64.032(c), 86.010(d).

■■■ If the evidence shows that mail-in absentee ballots were rejected for the sole reason that the election judge determined that there was a signature discrepancy, the trial court may review the signatures and hear testimony regarding the discretionary issue to determine whether the signatures on the mail-in ballot application and the carrier envelope were executed by the same person. *See Alvarez,* 844 S.W.2d at 245. However, the manner and procedure of casting absentee ballots is mandatory and directed by statutory requirements. *See* TEX. ELEC.CODE ANN. § 64.037, 86.010(d). Votes are void and should not be counted if the evidence shows that procedural statutory requirements were not followed in the casting of absentee ballots, even if the ballots were rejected for signature discrepancy. *Alvarez,* 844 S.W.2d at 245; *Garza,* 434 S.W.2d at 155.

*Violation of Statutory Procedures when Voter is Assisted*

■■■ Tiller challenges 7 of the 24 validated ballots on the basis that the voters did not follow the statutory procedural guidelines in casting the absentee ballots.[4] The decision of the trial court to validate ballots in which the voters did not follow the mandatory statutory requirements would clearly be an abuse of discretion. *See* TEX. ELEC.CODE ANN. §§ 64.037, 86.010(d). Review of the 7 ballots challenged on this basis reveals that the trial court abused its discretion by validating 2.

*Anita R. Trevio*

Ms. Trevio testified that she could not see at trial, but at the time she voted, her vision "was kind of clear. I could see a little, not very, very well." Ms. Trevio testified that she was not assisted in voting. Ms. Trevio's niece, Elda Balboa, testified that she read the ballot to Ms. Trevio and showed her where to sign it and mark it once Ms. Trevio indicated her choice. Ms. Balboa's testimony revealed that although Ms. Trevio signed and marked the ballot and carrier envelope certificate herself, she was nevertheless assisted. Ms. Trevio's carrier envelope certificate was not properly executed to indicate this assistance. The trial court therefore abused its discretion by validating this ballot.

*Antonio Gonzalez*

Mr. Gonzalez testified by video deposition through an interpreter. Mr. Gonzalez testified that he could not read the ballot and that he was assisted in marking the ballot. Although Mr. Gonzalez's testimony is a bit confusing, Mr. Gonzalez did testify that he was assisted. The evidence reveals that the statutory requirements reflecting this assistance were not followed. Therefore, the trial court abused its discretion by validating this ballot.

*Sylvia Bueno*

Ms. Bueno testified that she signed her ballot application and carrier envelope as well as those of her husband. When presented with four identical signatures, election officials rejected the ballot of one of the parties, Ms. Bueno. Because the election officials could not have determined which of the two was improperly executed, the rejection of one was prudent. However, based on Ms. Bueno's

4. On this basis, Tiller challenges the ballots of Sylvia Bueno, Manuela Garza, Antonio Gonzalez, Rosa T. Guerra, Lydia Salinas, Marta T. Soules, and Anita R. Trevio.

testimony, the rejection of her ballot was improper. The trial court's validation of Ms. Bueno's ballot was not an abuse of discretion based upon this testimony. Clearly, Ms. Bueno did not follow proper procedure upon signing her husband's documents. Accordingly, her husband's ballot should have been rejected. While the trial court's neglect in failing to invalidate Mr. Bueno's ballot could be an abuse of discretion due to his failure to follow the mandatory statutory requirements, *see Alvarez,* 844 S.W.2d at 245, neither party challenges the counting of Mr. Bueno's ballot. Therefore, this court will only review the trial court's validation of Ms. Bueno's ballot.

### Manuela Garza

Ms. Garza's ballot application did not contain her signature, but was properly signed by a witness. Ms. Garza's carrier envelope certificate was signed by her. Ms. Garza did not testify. Dorothy Jenkins, the presiding election judge and election judge of the mail-in ballots, testified that the application was properly witnessed and that the ballot was improperly rejected due to signature discrepancy. Therefore, the trial court did not abuse its discretion by validating this ballot.

### Rosa T. Guerra

Ms. Guerra testified by video deposition that she signed both the ballot application and carrier envelope and that she was not assisted even though she cannot read. Ms. Guerra testified that she "just went by the names [she] knew." Based on this testimony, the trial court did not abuse its discretion by validating the ballot on this basis.

### Marta T. Soules

Ms. Soules testified by video deposition that she signed the ballot application and the ballot itself, but that Ms. Ernestina Gonzalez signed the carrier envelope. Ms. Soules stated that "she knew I was having problems signing, so she told me, 'I'll sign it for you and mail it.'" Following leading questioning on redirect examination, Ms. Soules recanted this statement and testified that she executed the ballot herself without assistance, and Ms. Gonzalez only addressed the envelope. Ms. Soules testified that the signatures on the ballot application, the ballot, and the carrier envelope certificate were her own. Given this conflicting testimony, the trial court did not abuse its discretion by validating the ballot. *See Gomez v. Adame,* 940 S.W.2d 249, 251 (Tex.App.—San Antonio 1997, no writ)

### Lydia Salinas

Tiller contends the evidence shows that Ms. Salinas signed both her ballot application as well as her husband's and that her ballot was properly rejected for this reason. The evidence does not reveal this fact. Ms. Salinas testified by video deposition that she signed all the proper documents, and she was not assisted. Following her testimony, Tiller introduced the ballot application and carrier envelope certificate of Ms. Salinas' husband, Ramon Salinas. The evidence did not show that Ms. Salinas signed her husband's voting materials. However, the evidence did show that Ms. Salinas' ballot was improperly rejected. The trial court did not abuse its discretion by validating Ms. Salinas' ballot.

### Eligibility to Vote by Mail

■ Tiller next challenges several ballots[5] on the basis that Martinez failed to show that the voters were qualified to vote by mail under TEX. ELEC.CODE ANN. § 82.001 because of a disability. While all of the ballots challenged by Tiller on this basis were rejected due to signature discrepancies, Tiller contends that the ballots were otherwise properly rejected by the election judge because Martinez offered no proof that the voters were "disabled" under the statutory definition. During his cross examination of the witnesses, Tiller elicited testimony which he contends is clear and convincing evidence that the voters were not eligible to vote by mail. Tiller's argument on the basis that there was no evidence of disability fails for two reasons.

---

5. On this basis, Tiller challenges the ballots of Zulema Anzaldua, Orlando Estrada, Luis Lopez, Eva Luna, Diana Medina, Abelino Naranjo, Aurora Naranjo, Miguel Perez, Jr., and Petra Si- fuentes. Only Orlando Estrada's ballot is challenged solely on this basis. The others are also challenged for signature discrepancies.

First, because the ballots were rejected on the basis of signature discrepancies, not on the basis of the voters' legal qualification to vote, Martinez was required to show by clear and satisfactory evidence that the election judge erred by rejecting them. *See Alvarez,* 844 S.W.2d at 243–44. Martinez was not required to show that the voters were legally qualified in every respect. *Id.* Martinez, as the contestant, was required to show that the ballots were improperly rejected. *Id.*

▮▮▮ In addition, an absentee voter cannot, after the election, impeach his vote by testifying that he was not entitled under the law to cast an absentee ballot. *Zuniga v. Almaraz,* 514 S.W.2d 331, 334 (Tex.Civ. App.—San Antonio 1974, no writ). Accordingly, an absentee voter may not testify after the election contrary to the facts stated in his application for an absentee ballot. *See id.* Therefore, Tiller cannot rely on the testimony of these voters to deny efficacy to the absentee ballots cast by them. *See id.*

Accordingly, in relation to Tiller's challenge to these ballots on the basis that the voters were not eligible to vote early by mail, the trial court did not abuse its discretion by validating these ballots.

*Signature Discrepancy*

Tiller challenges most of the validated ballots on the basis that the trial court abused its discretion by finding that the election judge improperly rejected them on the basis of signature discrepancy.[6]

▮▮▮ In the event ballots are rejected by the election judge on the basis of signature discrepancies, and such rejection is contested at trial, the trial court may, in its discretion, uphold oral testimony from the voter or other witnesses regarding the similarity of the signatures and may compare the signatures to refute the election judge's decision. *Alvarez,* 844 S.W.2d at 245. However, when the signatures clearly appear to be different, the

trial court need not accept the testimony of the voter or other witnesses that the voter made both signatures. *Id.* The trial court is not required to believe the testimony about the signatures and may rely on its own comparison without the aid of expert testimony. *Id.*

Under an abuse of discretion standard of review, this court may not reverse merely because we disagree with the trial court's decision. *Beaumont Bank, N.A. v. Buller,* 806 S.W.2d 223, 226 (Tex.1991). This court must give deference to the trial court's resolution of factual issues and cannot set aside the trial court's decision unless it is clear from the record that the trial court could have reached only one decision. *Walker v. Packer,* 827 S.W.2d 833, 839–40 (Tex.1992). If the evidence conflicts and some evidence reasonably supports the trial court's decision, no abuse of discretion exists and we may not set aside the trial court's decision. *Davis v. Huey,* 571 S.W.2d 859, 862 (Tex.1978). Appellate review for abuse of discretion on the issue of signature discrepancy necessarily requires independent review and comparison of each signature on the application ballots and carrier envelope certificates to determine whether the challenged sets of signatures are so different to compel the conclusion that different persons signed them, or to override the court's conclusion that the same person signed them. *See Alvarez,* 844 S.W.2d at 246. However, the reviewing court should not determine the credibility of any witness or substitute its judgment for that of the trier of fact. *Gomez,* 940 S.W.2d at 251; *Loyd Elec. Co., Inc. v. Millett,* 767 S.W.2d 476, 482 (Tex.App.—San Antonio 1989, no writ).

▮▮▮ The trial court, as the fact finder, heard testimony from some of the voters whose ballots were rejected.[7] We decline to conclude that the trial court abused its discretion by validating the ballots of those 11

---

6. On this basis, Tiller challenges the ballots of Zulema Anzaldua, Sylvia Bueno, Adela Cardona, Lucinda Chavarria, Louis Everett, Remigio Liguez, Luis Lopez, Eva R. Luna, Diana Medina, Abelino Naranjo, Aurora Naranjo, Juan A. Navajar, Sr., Miguel Perez, Jr., Miquel C. Perez, Sr., Lydia Salinas, and Marta Soules.

7. Those voters testifying regarding the signatures appearing on their ballot application and carrier envelope were Zulema Anzaldua, Orlando Estrada, Louis Everett, Remigio Liguez, Luis Lopez, Diana Medina, Abelino Naranjo, Aurora Naranjo, Miguel Perez, Sr., Lydia Salinas, and Marta T. Soules.

voters who testified that the signatures were theirs. The trial court compared the signatures and heard the testimony. As fact finder, the trial court weighed the witness' credibility and the evidence and determined that the ballots were improperly rejected. We will not overturn this fact determination when the credibility of the witness is at issue. *See Walker*, 827 S.W.2d at 839–40; *Davis*, 571 S.W.2d at 862.

After comparing the signatures of the nontestifying voters, the trial court validated the ballots of six voters who did not testify at trial. We will review each signature on the application ballots and carrier envelope certificates to determine whether the challenged sets of signatures are so different to compel the conclusion that different persons signed them or to override the court's conclusion that the same person signed them. *See Alvarez*, 844 S.W.2d at 245–46.

*Miguel C. Perez, Jr. and Miguel Perez, Sr.*

Although Miguel Perez, Jr. did not testify, Miguel Perez, Sr. testified that he and his son both signed their own ballot applications; however, they both signed the other's carrier envelope certificate. The carrier envelope indicates that an election clerk typed the names on the carrier envelope but sent the wrong envelopes to each voter. Miguel Perez, Sr. testified that each voter signed the carrier envelope sent to them, although it contained the incorrect name. Dorothy Jenkins testified that she compared the carrier envelope certificate of Miguel Perez, Sr. with the ballot application of Miguel Perez, Jr., and vice versa. The trial court did not abuse its discretion by validating the ballot of Miguel C. Perez, Jr and Miguel Perez, Sr.

*Juan A. Navejar, Sr.*

Dorothy Jenkins testified and admitted that she erroneously compared the signatures on the ballot application of Juan A. Navejar, Sr. with the carrier envelope certificate of Juan A. Navejar. Given this testimony, the trial court did not abuse its discretion by validating this ballot.

*Lucinda Chavarria*

Dorothy Jenkins testified that Lucinda Chavarria's signature on her carrier envelope certificate was erroneously compared with Lucia Chavarria–Hinojosa's ballot application. Given this testimony, the trial court did not abuse its discretion by validating this ballot.

*Adela Cardona*

Review of the signatures on the carrier envelope and the ballot application are different. However, Dorothy Jenkins testified that the ballot was not rejected based on signature discrepancy, but because the envelope appeared to be tampered. Martinez contended at trial that this was an unauthorized reason under the Election Code. Tiller does not challenge the trial court's validation of this ballot based on improper rejection for tampering, but because a "review of the signatures leads to the inescapable conclusion that the same person did not sign both times." Tiller's challenge on appeal is improper.

*Eva R. Luna*

The signatures appearing on the ballot application and carrier envelope certificate appear sufficiently similar to validate the ballot. Although the signatures were made with different pens, they appear to be executed by the same person. The two signatures are not so different as to override the trial court's conclusion. The trial court did not abuse its discretion by validating this ballot.

*Louis Everret*

Dorothy Jenkins testified at trial that the two signatures did not appear to be made by the same person. Mr. Everett did not testify. Review of the two signatures reveals that they are not so different as to override the trial court's conclusion.

*Mailing of Ballot to Improper Address*

Tiller contends that the trial court erred by validating the ballots of Petra Sifuentes, Delma Gutierrez, and Manuela Botello because the voters did not include a residential affidavit with their ballot application or ballot to comply with statutory requirement. Review of this challenge to these three validated ballots is unnecessary based on our

conclusions regarding the prior challenged, validated ballots.

### Failure to Invalidate Ballots Mailed to Post Office Boxes

■ At trial, Tiller generally challenged 31 counted ballots as invalid because the ballots were mailed to a post office box instead of the voter's "residence address." The trial court found these 31 ballots to be correctly counted because Tiller failed to meet his burden of proof to invalidate them. In his fourth point of error, Tiller contends that the trial court erred by failing to invalidate these ballots.

Tiller contends that the 31 ballots should not have been counted because the mailing address provided on the ballot application was a post office box. Tiller's argument fails because he did not prove that the contested ballots were cast in his race. As the contestant, Tiller was required to prove that illegal votes were cast in the election being contested and that a different result would have been reached by not counting the illegal votes. *Chumney v. Craig*, 805 S.W.2d 864, 870 (Tex.App.—Waco 1991, writ denied). Tiller failed to show that the ballots were cast in his race. Because Tiller failed to show that a different result would have been reached had the ballots not been counted, he failed to meet his burden of proof. Tiller's fourth point of error is overruled.

### Ballots Improperly Assisted or Witnessed

■ Tiller argues on appeal that 24 ballots were improperly counted because they contain "signature or witnessing or assistance problems that should have made those votes void." At trial, Tiller tendered during the presentation of his defense a compilation of the voting materials of voters who were assisted or whose applications or carrier envelopes were witnessed. Tiller requested that these votes not be counted. Tiller failed to establish that the challenged ballots actually contained votes cast in the Place 3 election. Tiller failed to present argument as to why these ballots were invalid. The trial court entered no findings of fact or conclusions of law on this issue. To the extent that this issue was properly before the trial court, it did not abuse its discretion by failing to

invalidate these 24 ballots. *See Chumney,* 805 S.W.2d at 870.

We affirm the trial court's judgment. Of the 24 validated ballots challenged by Tiller, the record reveals that the trial court abused its discretion by validating 2. This is insufficient to overturn the election results as determined by the trial court. Tiller's challenge to the trial court's failure to invalidate 31 counted ballots on the basis that the ballots were improperly mailed to a post office box fails because Tiller did not prove that the contested ballots were cast in the Place 3 race. Tiller's challenge to the trial court's failure to invalidate 24 counted ballots on the basis that the ballots were improperly witnessed fails because Tiller failed to establish that the challenged ballots actually contained votes cast in the Place 3 election and failed to present specific argument as to why these ballots were invalid. Accordingly, the judgment of the trial court is affirmed.