Opinion issued March 9, 2006















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01065-CV




DONALD HARRISON, Appellant

V.

LEROY STANLEY, Appellee




On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2005-45756




O P I N I O N
          Appellee, Leroy Stanley, filed an election contest against appellant, Donald
Harrison, after an exceedingly close final vote tally in a runoff election for a 
Pasadena City Council position. The trial court refused appellant’s request to include
in the final tally three ballots in his favor that had been excluded by the Early Voting
Ballot Board. Appellant filed this expeditedissues on appeal. Appellant contends that are (1) that the Early Voting Ballot Board acted improperly in comparing the relevant signatures;and (2) that the trial
court erred in excluding the ballots at issue. For the reasons that follow, we affirm.
BACKGROUND
          On May 7, 2005, an election pitting appellant against appellee was held for a
seat on the Pasadena City Council; it resulted in a tie, which necessitatinged a run-off election. 
The run-off election was almost as close: 591 votes were tallied for appellant, 590 for
appellee. During the course of the ballot counting, the Early Voting Ballot Board
(“Board”) excluded three ballots from consideration because the signatures on the
carrier envelopes and mail-in ballot applications did not match, as required by the
Election Code.


 Appellee filed an election contest, and, after discovery, the parties
stipulated that two of appellant’s votes were impermissibly counted because one voter
lived outside the geographic boundary of the district in question and the others voter’s
registration status had not become effective until after the run-off election. This
placed appellee ahead by one vote, 590 to 589.
          After appellee rested his case, Aappellant introduced the applications for ballot
by mail and carrier envelopes of three voters—Donald Howard, Angel Marino, and
Gary Gray—who had voted for him.. The trial court heard testimony from each of the
three voters and, via their depositions, from the four Board members. The Board
memberswho had testified that they found, as to appellant’s three proffered voters, that the
signatures on the applications for ballots by mail were not made by the same person
who signed the carrier envelopes, thereby violating election law statutes. The trial
court agreed, finding that the relevant signatures did not match. agreed. The trial court further
found that “assistance,” as defined in the Texas Election Code, had been given to
each of the proffered voters, in contravention of same.


 The court also found that
none of the three proffered voters had a physical disability such that they could not
write or see.


 After the trial court declined to addthe mail-in ballotsto appellants vote total, filed this expedited appeal contendingthat the trial court abused its discretion in failing to count the three mail-in ballots.
DISCUSSION
          The standard of review for an appeal from a judgment in an election contest is
whether the trial court abused its discretion. Tiller v. Martinez, 974 S.W.2d 769, 772
(Tex. App.—San Antonio 1998, pet. dism’d w.o.j.). To overturn an election, the
contestant must show that the outcome, as shown by the final canvass, is not the true
outcome, either because illegal votes were counted, or because an election official
prevented eligible voters from voting, failed to count legal votes, or engaged in other
fraud or illegal conduct or made a mistake. See Tex. Elec. Code Ann. § 221.003
(Vernon 2003).


 The contestant has the burden to make this showing by clear and
convincing evidence. Alvarez v. Espinoza, 844 S.W.2d 238, 242 (Tex. App.—San
Antonio 1992, writ dism’d w.o.j.). The law presumes that the Ballot Board acted
properly in rejecting and accepting ballots; to overcome this presumption, a
challenger must show by clear and convincing evidence that the board erred. Id. at
244.
            “To determine whether the trial court abused its discretion, we must review and
compare each signature on the early voting ballot applications and carrier envelopes
the trial court found to be non-genuine to ascertain whether the signatures are similar
enough (i) to compel the conclusion that the same person signed them, or (ii) to
override the trial court's conclusion that the same person did not sign them.” Reese
v. Duncan, 80 S.W.3d 650, 661 (Tex. App.—Dallas 2002) (“We do not determine the
credibility of any witness or substitute our judgment for that of the trial court.”); See >see
also Alvarez, 844 S.W.2d at 245cf. > Tiller, 974 S.W.2d at 777 (applying the standardof review in a case in which the trial court found the election judge improperlyrejected the ballots) See > Tiller, 974 S.W.2d at 777.
Appellate review for abuse of discretion on the issue of signature discrepancynecessarily requires independent review and comparison of each signature on theapplication ballots and carrier envelope certificates to determine whether thechallenged sets of signatures are so different to compel the conclusion that differentpersons signed them. Tiller, 974 S.W.2d at 777. However, the reviewing courtshould not determine the credibility of any witness or substitute itsjudgment for thatof the trier of fact. Id. Election Code Requirements & Ballot Board
          Appellant’s first contendsargument is that the Ballot Board incorrectly rejected the three
ballots at issue because it impermissiblycreated an ultra vires requiredmen that the signatures on the ballot
envelope and mail-in application match—a requirement, he argues, not compelled by
the Election Code. 
          To be entitled to vote an early voting ballot by mail, the application must be
signed by the eligible voter. Tex. Elec. Code Ann. § 84.001(b) (Vernon 2003). A
witness may sign for the voter if the voter cannot sign due to a physical disability or
illiteracy. Id. § 1.011(a). A person who fails to comply with section 84.001 of the
Election Code is not entitled to receive an early voting ballot by mail. Id. § 84.001(f). 
A voter is required to sign the certificate on the carrier envelope after it is sealed. Id.
§ 86.005(c). After the early voting clerk delivers the early voting ballots by mail to
the Ballot Board, the Board may accept a ballot, among other requirements, if neither
the voter’s signature on the application nor the signature on the carrier envelope is
“determined to have been executed by a person other than the voter, unless signed by
a witness.” Id. § 87.041(b)(2). If the Ballot Board rejects a ballot, it shall enter
‘rejected’ on the carrier envelope. Id. § 87.041(d).
           As support, appellant points us toward the text of sSection 87.041(b)(2) of the Election Code provides:
(b) A ballot may be accepted only if:
          . . .
 
(2) neither the voter’s signature on the ballot application nor the
signature on the carrier envelope certificate is determined to have been
executed by a person other than the voter, unless signed by a witness. 
 
Id. § 87.041(b)(2). Clearly, what the Ballot Board is required to do is ensure that the
same voter signed both the ballot application and carrier envelope. In order to ensure
such,To help interpret thisrequirement appellant then cites to section 87.041(e) provides:
(e) In making the determination under Subsection (b)(2), the board may
also compare the signatures with the signature on the voter'’s registration
application to confirm that the signatures match but may not use the
registration application signature to determine that the signatures do not
match.

Id. at § 87.041(e). 
          Appellant parses the statutory language to require only that both signatures be
that of the voter, not that the signatures are required to match. Moreover, or so his
argument goes, if, as according to sub-section (e), the Ballot Board may not use “the
registration application signature to determine that the signatures do not match,” why 
should “the mail–in application and ballot [carrier] envelope signatures be use [sic]
to invalidate each other?” Appellants argument is not unpersuasive; there is noexplicit requirement that the signatures match, and sub-section (e) does seem, at firstblush, to support his statutory interpretation.However, while we agree that the statute is inartfully worded, appellantsargument proves too much. We do not see how the Ballot Board members couldmake the determination that the signatures on the carrier envelope and ballotapplication do not match if they are precluded from using each as a point ofcomparison against the other. Appellant has no answer for this. 
          Furthermore, However, appellant’s argument does not square with election law
jurisprudence of our state. other courts of appeals have found tha Several courts of appeals have held that the Election Code
does give the Ballot Board the authority to compare the signatures on the carrier
envelope and ballot application to determine if they are sufficiently similar so as to
compel the conclusion that they were made by the same person. In Reese, the court
held:
The contestant must overcome the presumption that the early voting
ballot board or signature-verification committee acted properly in
rejecting or accepting ballots. The contestant must show that the board
erred. In determining whether there is a signature discrepancy involving
an early voting ballot, the trial court may hear testimony from the voter
or other witnesses on the similarity of the signatures and may compare
the signatures to refute the signature verification committee’s decision.
Having reviewed and compared each pair of challenged signatures
in the trial court’s finding of fact number twenty-three, we conclude
none of the pairs of signatures are similar enough to compel the
conclusion that the voter signed the ballot application or carrier
envelope or both, or to override the trial court’s finding that either the
ballot application or the carrier envelope or both were not signed by the
voter.

80 S.W.3d at 661–62 (internal citations omitted); see also Alvarez, 844 S.W.2d at 245
(“The law places the burden on those who vote early by mail to sign both the
application and the envelope with signatures that match. The Early Voting Ballot
Board must act on the basis of the signatures before it.”). We agree with our sister courts pragmatic interpretation of this sectionof the Election Code and Therefore, the Ballot Board
acted in accordance with both statutory and case law in rejecting the ballots. We hold
that the Ballot Board acted properly in comparing the signatures on the application
and carrier envelope to determine whether they were signed by the same person.Accordingly, we overrule appellants first point of error. 
 
The Trial Court’s Rejection of the Ballots
          Appellant’s other argument nextasserts that the trial court erred in rejecting the
mail-in ballot applications of Donald Howard, Angel Marino, and Gary Gray. We
analyze each ballot separately.
The Howard Ballot
          Appellant argues that because Howard testified thatboth the signatures on both the
carrier envelope and ballot application were his, the trial court erred in rejecting his
ballot. While we may agree with appellant that the two signatures appearSpecifically, appellant argues here that the trial court erred because it relied
on the Ballot Board’s decision that the relevant signatures did not match—and repeats
his argument that the correct standard is whether the signatures were made by the
same person. However, because we held above that it was not error for the Ballot
Board, nor, by extension of that same reasoning, the trial court, to compare the
signatures, what is left of appellant’s argument consists of asking us to substitute our
judgment for that of the trial court. We decline to do that. 
          First, it is clear from our review of the signatures that they are not sufficiently
similar to compel the conclusion that the voter signed both the carrier envelope and
the ballot application. One signature evinces the hand of one who does not have great
control over the writing instrument, while the other looks to be the signature of a
person with normal motor control. Moreover, the trial court was entitled to believe
all, part, or none of the testimony that it heard from Howard. See Munters Corp. v.
Swissco-Young Indus., Inc., 100 S.W.3d 292, 299 (Tex. 2002) (holding that trial court
entitled to believe all, part, or none of evidence adduced). Therefore, we hold that the
trial court did not abuse its discretion in rejecting Howard’s ballot. Tiller, 974
S.W.2d at 777. 
 sufficiently similar to passa normal level of scrutiny, the issue of voter assistance is dispositive insofar asHowards ballot is concerned. Howard testified that he wassitting in his garage whenappellant visited him. Howard testified that appellant showed [me] how to [fill outthe ballot application]. Specifically, appellant showed Howard where to sign it andhow to fill it out and so on. Section 64.0321 of the Election Code reads:
For purposes of this subchapter and Sections 85.035 and 86.010,assisting a voter includes the following conduct by a person other thanthe voter that occurs while the person is in the presence of the voter'sballot or carrier envelope:
(1) reading the ballot to the voter;(2) directing the voter to read the ballot;(3) marking the voter's ballot; or(4) directing the voter to mark the ballot. 
Tex. Elec. Code Ann. 64.0321 (Vernon 2005). Appellants argument is simply thatthe conduct described above by Howard falls short of the statutory definition ofassistance. Appellant, for what it is worth, is right when he says that Howard did nottestify that appellant explicitly read him the ballot. However, implicit in the actsof showing one how to fill out a ballot application and showing one where to signit and how to fill it out and so on6 is some form of communication that falls withinthe statutory definition of reading the ballot to the voter. Id. Therefore, we holdthat because appellant was not eligible for voter assistance under section 64.031 oftheElection Code7 and received such, the trial court correctly excluded Howards ballotas illegal. The Marino Ballot
          Angel Marino admitted that his two signatures did not match. However, he
testified that he printed his name on the carrier envelope—because he thought this
was the proper protocol—but penned his usual signature on the ballot application. 
We can fault neither the Ballot Board nor the trial court for concluding that the
signatures do not match—they clearly do not (appellant admits as much), and they
certainly do not compel the conclusion that they are sufficiently similar such that they
were made by the same person. independentBecause, by extension of that same reasoning,,,Therefore, because our review of the signatures
mirrors that of the Ballot Board’s and the trial court’s, what is left of we hold that the trial court did
not abuse its discretion in rejecting Marino’s ballot. Id. 
The Gray Ballot
          Gray’s ballot differs in the material sense in that, according to his testimony,
his wife signed his ballot application and he signed the carrier envelope. Appellant
argues that when certain sections of the Election Code are read together they support
a spousal exception to the statutory requirement that the signatures be made by the
same person.
          Section 84.003 of the Election Code provides: 
(a) An early voting ballot application signed for the applicant by a
witness other than the early voting clerk or a deputy must indicate the
witness's relationship to the applicant or, if unrelated, indicate that fact.
 
(b) A person who acts as a witness for an applicant for an early voting
ballot application commits an offense if the person knowingly fails to
comply with Section 1.011.


 A person who in the presence of the
applicant otherwise assists an applicant in completing an early voting
ballot application commits an offense if the person knowingly fails to
comply with Section 1.011(d) in the same manner as a witness.
 
(c) An offense under this section is a Class A misdemeanor.
 
(d) Subsection (b) does not apply if the person is related to the applicant
within the second degree by affinity or the third degree by
consanguinity, as determined under Subchapter B, Chapter 573,
Government Code, or is registered to vote at the same address as the
applicant.

Tex. Elec. Code Ann. § 84.003 (Vernon Supp. 2005) (emphasis added). Appellant
asserts, correctly, that when one person signs a voter’s ballot application in such a
manner that it does not conform with section 1.011, section 84.003(d) creates
statutory immunity for a person related to the voter within the prescribed degrees of
consanguinity or affinity. See id. at § 84.003(d). However, this does not, as appellant
would have it, “support the argument that husbands and wives, residing together, can
sign ballot applications for each other.” 
            Section 84.003(d) of the statute only prevents a misdemeanor prosecution of
a relative who knowingly fails to comply with the Election Code. It does not speak
to the requirement delineated in section 84.003(a) that a person signing a ballot
application must indicate that person’s relationship to the voter. The trial court did not
abuse its discretion in excluding Gray’s ballot.



          We conclude that the trial court acted properly in excluding the ballots
proffered by appellant and overrule appellant’s second point of error.
CONCLUSION
          The decision of the trial court is affirmed in all respects.
 
                                                                        Sam Nuchia
                                                                        Justice

Panel consists of Justices Nuchia, Keyes, and Hanks.