Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# OPINION

No. 04-08-00561-CV

Rick **FLORES**,
Appellant

v.

Martin **CUELLAR**,
Appellee

From the 406th Judicial District Court, Webb County
Trial Court No. 2008-CVQ-775-D4
Honorable David Peeples, Judge Presiding[1]

Opinion by:    Karen Angelini, Justice

Sitting:       Karen Angelini, Justice
           Rebecca Simmons, Justice
           Steven C. Hilbig, Justice

Delivered and Filed:   August 27, 2008

AFFIRMED

Rick Flores, the current Webb County Sheriff, appeals from a final judgment against him in an election contest. *See* TEX. ELEC. CODE ANN. § 232.014 (Vernon 2003). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 8, 2008, a primary run-off election was held to select the Democratic nominee for the office of Webb County Sheriff. Flores, the incumbent, was opposed by appellee Martin Cuellar.

---

[1]Sitting by assignment.

In an election night vote count conducted by county election officials, Cuellar won the election by a margin of 37 votes. In a subsequent recount conducted by the Democratic party, Flores won the election by a margin of 133 votes. Then, in a court-supervised recount, Cuellar won the election by a margin of 39 votes.

Flores filed an election contest challenging the results of the court-supervised recount. Flores claimed the results reported from the electronic voting devices were unreliable and could not be utilized in determining the winner of the election. Flores asked the trial court to find the true outcome of the election could not be determined and to order a new election.

The election contest was tried to the court. The evidence presented at trial showed each electronic voting device records the votes cast in two places—on a personal electronic ballot (PEB) and a flash card. The total votes recorded on the PEBs and the flash cards should always be the same. In the election at issue in this case, two of the electronic voting devices had a discrepancy between the number of votes recorded on their PEBs and their flash cards. The discrepancy, or "mismatch" as it was termed, occurred in precincts 231 and 255. The remaining 57 precincts showed no mismatch between their PEBs and their flash cards.

Flores offered the testimony of Dr. Giovanni Vigna, a computer scientist. Although Dr. Vigna had never examined the electronic voting devices used in Webb County and was uncertain as to whether the electronic voting devices were the same as ones he had studied, Dr. Vigna concluded the mismatch in the PEBs and the flash cards revealed an inherent unreliability in the entire electronic vote count for this election. Dr. Vigna did not confine his opinion to the electronic voting devices in precincts 231 and 255, but extended his opinion to all of the electronic voting devices used in Webb County. Dr. Vigna concluded that if there were problems with the devices in two

precincts, there were problems in all of the devices, regardless of whether the discrepancy was caused by human error, hardware error, or software error. Dr. Vigna also pointed out that because there was no printer attached to the devices and thus no "paper trail," there was no way to verify the number of votes each candidate received. Dr. Vigna surmised the discrepancy between the vote counts in the PEBs and the flash cards in the devices used in precincts 231 and 255, rendered the vote count for each candidate unreliable. Thus, Dr. Vigna concluded that the true outcome of the election could not be determined.

The trial court issued findings of fact and conclusions of law. The pertinent findings are:

5. There were no imperfections in the voting machines, or in the count of the machine votes, that affected the outcome of the election.

6. The election-day count of the machine votes in precincts 231 and 255 was accurate, that count is accepted by the court as the true vote. [] But even if the machine count in precincts 231 and 255 on election day was not accurate, and the count at the judicial recount (from the machine "flash card" records) was accurate, that would benefit Flores by only 9 votes, which would be insufficient to affect the outcome of the 42-vote election.

7. The court was not persuaded by Dr. Vigna's testimony that the accuracy of the voting machines should be questioned or that the machine-vote results were tainted.

8. The court was not persuaded by Dr. Vigna's opinion that the difference between the election-day machine count and the judicial recount in precincts 231 and 255 casts doubt on the machine vote in the other 57 districts. That argument is respectfully rejected.

9. The argument that all of the election-day machine vote in precincts 231 and 255 should be discarded is respectfully rejected. []

The conclusions of law are:

1. There were no irregularities in this election that affected the outcome.

2. Because the votes have been accurately counted and the 10 illegal votes subtracted from the candidate who received the votes, the true result of the election is known and a new election should not be ordered.

3. Martin Cuellar won the election for sheriff in the Democratic Primary Run-off election by 42 votes.

## ELECTION CONTEST

The purpose of an election contest is to determine whether the outcome of an election is correct. TEX. ELEC. CODE ANN. § 221.003(a) (Vernon 2003); *Rodriguez v. Cuellar*, 143 S.W.3d 251, 260 (Tex. App.—San Antonio 2004, pet. dism'd). To overturn an election, the contestant must prove by clear and convincing evidence that voting irregularities materially affected the election results. *Tiller v. Martinez*, 974 S.W.2d 769, 772 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.); *see also Alvarez v. Espinoza*, 844 S.W.2d 238, 242 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). To prove the outcome was materially affected, the contestant must show that illegal votes were counted or an election official prevented eligible voters from voting, failed to count legal votes or engaged in other fraud, illegal conduct, or mistake. TEX. ELEC. CODE ANN. § 221.003(a) (Vernon 2003). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of the irregularities. *Willet v. Cole*, 249 S.W.3d 585, 589 (Tex. App.—Waco 2008, no pet.).

An election contestant's burden is a heavy one, and the declared results will be upheld in all cases except when there is clear and convincing evidence of an erroneous result. *Id.*, 249 S.W.3d at 589. The clear and convincing standard requires more proof than the preponderance of the evidence

standard in ordinary civil cases. *Id*. That standard is the degree of proof that will produce in the mind of the trier of fact a "firm conviction or belief as to the truth of the allegations to be proved." *Id*.

"The standard of review in an appeal from a judgment in an election contest is a determination whether the trial court abused its discretion." *Tiller*, 974 S.W.2d at 772.

### EXPERT OPINION TESTIMONY

Uncontroverted expert testimony may be regarded as conclusive if the nature of the subject matter requires the factfinder to be guided solely by the opinion of experts and the evidence is otherwise credible and free from contradictions and inconsistency. *Uniroyal Goodrich Tire Co. v. Martinez*, 977 S.W.2d 328, 338 (Tex. 1998); *Novosad v. Mid-Century Ins. Co.*, 881 S.W.2d 546, 550 (Tex. App.—San Antonio 1994, no writ), *abrogated on other grounds, Brainard v. Trinity Universal Ins. Co.*, 216 S.W.3d 809 (Tex. 2006). However, an expert's testimony may be contradicted by the testimony of other witnesses or by cross-examination of the expert witness. *Gober v. Wright*, 838 S.W.2d 794, 797 (Tex. App.—Houston [1st Dist.] 1992, writ denied), *abrogated on other grounds*, *State Farm Fire & Cas. Co. v. Morua*, 979 S.W.2d 616 (Tex. 1998).

Dr. Vigna testified the mismatch between the PEBs and the flash cards in the devices in precincts 231 and 255 revealed an inherent unreliablity in the entire electronic vote count which could not be remedied because of the absence of an attached printer to verify the electronically recorded vote. Dr. Vigna concluded that because there was a mismatch in two electronic devices, there was necessarily a problem with all 59 devices and therefore the reliability of all of the electronic devices was in question. Dr. Vigna suggested the mismatch was analogous to a situation in which a person discovers his bank account is missing $23.00. Dr. Vigna submitted that such a banking error would make him "really really untrustworthy of the banking system altogether."

Secondly, Dr. Vigna speculated the mismatch could also indicate a failure to accurately register the electronic votes for the proper candidate. The only remedy, in Dr. Vigna's opinion, was to conduct another run-off election.

Flores contends the trial court was required to accept the opinions of Dr. Vigna concerning the unreliability of the electronic voting devices and the need for a new election. We disagree. Even if the nature of the subject matter did require the trial court to be guided solely by the opinion of experts, the trial court could have properly concluded Dr. Vigna's expert opinions were not otherwise credible and free from contradictions and inconsistency. *See Novosad*, 881 S.W.2d at 550; *Gober*, 838 S.W.2d at 797. The trial court could, and apparently did, consider portions of Dr. Vigna's own testimony that undercut his conclusions and opinions that the electronic voting devices were unreliable and that the outcome of the election could not be determined. The trial court could also, and apparently did, consider other evidence that countered Dr. Vigna's testimony.

"[A]lthough expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness.'" *Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004) (quoting *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex. 1999)). "Opinion testimony that is conclusory or speculative is not relevant evidence, because it does not tend to make the existence of a material fact 'more probable or less probable.'" *Id.* "It is peculiarly within the province of the [factfinder] to weigh opinion evidence, taking into consideration the intelligence, learning, and experience of the witness and the degree of attention which he gave the matter." *Coxson v. Atlanta Life Ins. Co.*, 179 S.W.2d 943, 945 (Tex. 1944).

Here, Dr. Vigna admitted he had not examined or tested any of the machines used in Webb County. Nevertheless, he speculated it was "very very likely that the machines used in Webb County [were] extremely similar or identical" to the ones he had previously tested. Thus, Dr. Vigna's opinions were based in large part on the assumption the electronic voting devices were extremely similar or identical to the ones he had previously tested. Because Dr. Vigna's testimony was based on speculation, the trial court was not required to accept this evidence.

Next, Dr. Vigna admitted he did not know the cause of the mismatch between PEB and flash card vote totals and stated there could be an "infinite" number of causes ranging from human error to hardware to software. Dr. Vigna stated that with more investigation and time he could have determined the most probable cause of the mismatch. In evaluating the weight to be given Dr. Vigna's testimony, the trial court could have properly taken into account the limited degree of attention supporting his opinions and conclusions.

Finally, Dr. Vigna concluded the mismatch in the electronic voting devices in precincts 231 and 255 called into question not only the results from these two devices, but rendered the remaining 57 devices unreliable. Dr. Vigna speculated the discrepancy between the PEBs and the flash cards in the devices in precincts 231 and 255 could be indicative of vote "switching," that is, when a voter selected a particular candidate the vote would register for the opposing candidate. These conclusions were unsupported by any analysis or reasoning.

Dr. Vigna's testimony was also countered by the testimony of the Webb County Elections Administrator, Oscar Villarreal. Villarreal testified the same electronic voting devices were used in a subsequent election, and no problems or discrepancies occurred. Villarreal also testified the

signature rosters could be used to provide a "check[]and balance[]" on the vote count.[2] Villarreal testified that here the total number of PEBs recorded on the devices in precincts 231 and 255, plus the total number of paper ballots in precincts 231 and 255, corresponded almost perfectly to the total number of voters on the signature rosters in both precinct 231 and 255. The trial court was entitled to rely on Villarreal's testimony.

Ultimately, the trial court found that Cuellar won the election by a margin of 42 votes. The trial court found the election day count derived from the PEBs in precincts 231 and 255 was accurate and accepted that count as the true vote. The trial court also found that even if the electronic voting device count in precincts 231 and 255 on election day was not accurate, and the count from the court-supervised recount from the flash cards was accurate, that would benefit Flores by only 9 votes, which would be insufficient to affect the outcome of the 42-vote election.

## CONCLUSION

To overturn this election, Flores was required to prove by clear and convincing evidence that voting irregularities materially affected the election results. Because Flores did not establish by clear and convincing proof that voting irregularities materially affected the outcome of the election, the trial court did not abuse its discretion in refusing to order a new election. *See Willet*, 249 S.W.3d at 589; *Tiller*, 974 S.W.2d at 772. The judgment of the trial court is therefore affirmed.

---

[2]Signature rosters are required by the Texas Election Code. "A signature roster shall be maintained by an election officer at the polling place." TEX. ELEC. CODE ANN. 63.002(a) (Vernon 2003). "A voter who is accepted for voting must sign the roster before the voter is permitted to vote." *Id.* at 63.002(b).

In light of the expedited nature of this appeal, this court will not entertain rehearing motions. *See* TEX. ELEC. CODE ANN. § 232.014(e) (Vernon 2003). The Clerk is directed to issue the mandate at the same time as our judgment affirming the trial court's judgment. TEX. R. APP. P. 18.1(c).


Karen Angelini, Justice