

# NUMBER 13-22-00204-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

MINERVA M. PEÑA,                                                    Appellant,

v.

MARISA F. LEAL,                                                      Appellee.

## On appeal from the 107th District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Tijerina, and Peña
### Memorandum Opinion by Justice Tijerina

Appellant Minerva M. Peña appeals the trial court's judgment in favor of appellee

Marisa F. Leal declaring the 2020 general election for the Board of Trustees, Place 6, of

the Brownsville Independent School District ("BISD") void and ordering a new election.

By two issues that we analyze as one, Peña contends that the trial court used the wrong

formula in determining that twenty-four illegally cast votes "were equal to or greater than

the number of votes necessary to materially affect the outcome of the election." We affirm.

## I. PERTINENT FACTS

On November 3, 2020, a general election was held to select the Board of Trustee for Place 6 of BISD. Three parties ran for the position, including Peña and Leal. Eventually, Peña was declared the winner of the election. She won by eight votes. Leal sued pursuant to Title 14, Chapter 232 of the Texas Election Code contesting the result of the election. A bench trial was held. The trial court ruled in favor of Leal, declared the election void, and ordered a new election. In its order, the trial court stated, "The Court further finds that the twenty-four (24) illegal votes cast in this election is equal to or greater than the number of votes necessary to change the outcome of the election."

The trial court entered findings of fact and conclusions of law. As pertinent here, the trial court found that several of the votes were illegal as follows: (1) sixteen mail-in voters used the same single address that was clearly not the residence of all sixteen mail-in voters; (2) three mail-in ballots had improper signatures on the envelope of the mail-in ballots; and (3) five voters received unlawful assistance when they voted.

Peña filed a motion for new trial claiming that "the minimum number of votes needed to change the outcome of the election was over 100 votes." Peña argued that the trial court's "error comes from [its] failure to analyze the distribution of the votes that are deducted from each of the three (3) party's vote count." The trial court denied Peña's motion for new trial. This appeal followed.

2

## II.  STANDARD OF REVIEW AND APPLICABLE LAW

We review an election contest for abuse of discretion. *McCurry v. Lewis*, 259 S.W.3d 369, 372 (Tex. App.—Amarillo 2008, no pet.). "A trial court abuses its discretion when it acts 'without reference to any guiding rules and principles.'" *Id.* (citing and quoting *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). Accordingly, if the trial court acted within its discretion, we may not reverse the judgment simply because we might have reached a different result. *Id.*

Section 221.003 sets out the scope of inquiry in an election dispute as follows:

(a)  The tribunal hearing an election contest shall attempt to ascertain whether the outcome of the contested election, as shown by the final canvass, is not the true outcome because:

  (1)  illegal votes were counted; or

  (2)  an election officer or other person officially involved in the administration of the election:

    (A)  prevented eligible voters from voting;

    (B)  failed to count legal votes; or

    (C)  engaged in other fraud or illegal conduct or made a mistake.

(b)  In this title, "illegal vote" means a vote that is not legally countable.

(c)  This section does not limit a provision of this code or another statute expanding the scope of inquiry in an election contest.

TEX. ELEC. CODE ANN. § 221.003.

An election contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results. *Tiller v. Martinez*, 974 S.W.2d 769, 772 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.); *Guerra v. Garza*, 865

3

S.W.2d 573, 576 (Tex. App.—Corpus Christi–Edinburg 1993, writ dism'd w.o.j.). The contestant must either show that (1) "a different and correct result should have been reached by counting or not counting certain specified votes affected by the irregularities," or (2) "that the irregularities rendered impossible a determination of the majority of the voters' true will." *Guerra*, 865 S.W.2d at 576.

Once a contestant meets the burden of proof and the trial court can ascertain the true outcome of the election, it shall declare the outcome. *Tiller*, 974 S.W.2d at 772. "However, if the trial court cannot ascertain the true outcome of the election, it must declare the election void." *Id.* (citing TEX. ELEC. CODE ANN. § 221.012).

### III.  PEÑA'S ARGUMENT

Peña does not dispute the trial court's finding that there were twenty-four illegal votes cast in the election. Instead, Peña "disputes that 24 illegally cast votes is sufficient evidence to conclude that said votes materially affected the outcome of the election." Peña takes issue with how the trial court calculated the number of illegal votes because according to her, it did not "analyze the distribution of the votes that are deducted from each of the three (3) party's vote count."

In her brief, Peña sets out the formula she claims the trial court should have followed in analyzing the effect of the nineteen mail-in ballots voided by the trial court. Peña argues that because the trial court did not apply the proposed formula, the trial court's calculation is fundamentally wrong. Under Peña's proposed formula, "the votes thrown out by the [trial court] would equal 0.095 (9.5%) of a vote (not even enough to round up to 1 vote)." As to the five assisted votes that the trial court voided, Peña argues

4

that using her purposed formula, the five votes "would equal 0.025 (2.5%) of a vote (not even enough to round up to 1 vote)." Therefore, according to Peña, "the 5 'illegal assistance' votes thrown out also failed to materially affect the outcome of the election." Peña's theory relies on the assumption that a percentage of these individual votes should have been attributable to each of the three candidates.

## IV. DISCUSSION

In some cases, it may be possible for the trial court to "determine (1) that illegal votes were cast, (2) the number of illegal votes cast, and (3) the candidate for whom those votes were cast." *Gonzalez v. Villarreal*, 251 S.W.3d 763, 782 (Tex. App.—Corpus Christi–Edinburg 2008, pet. dism'd). Additionally, the trial court may bring in the person who casts an illegal vote and "may require" that person to disclose the name of the candidate for whom he voted. *Id.* In such cases, the trial court is directed to "'subtract the vote from the official total for the candidate or side of the measure, as applicable.'" *Id.*

However, a trial court is not required to determine "for whom an illegal vote was cast," and instead, "the code provides that 'if the tribunal finds that illegal votes were cast but cannot ascertain how the voters voted, the tribunal shall consider those votes in making its judgment.'" *Id.*

> Although [§] 221.011 does not dictate exactly how those illegal votes should be considered, § 221.009 provides the answer: "[i]f the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how individual voters voted."

*Id.* Thus, when the trial court "determines that illegal votes were cast and that the number of illegal votes equals or is greater than the margin of victory, the trial court can then

5

declare the election void without ever inquiring as to the candidate for whom those illegal votes were cast." *Id.*; *see also Alvarez v. Espinoza*, 844 S.W.2d 238, 242 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) (recognizing that the election code permits the trial court to determine whether the number of illegal votes exceeds the margin without attempting to determine which candidate received any of the illegal ballots that were cast"); *Kelley v. Scott*, 733 S.W.2d 312, 314 (Tex. App.—El Paso 1987, writ dism'd) (setting out that the election code "provides that if the number of illegal votes is equal to or greater than the number of votes necessary to change the outcome of an election, the tribunal may declare the election void without attempting to determine how the individual voters involved voted").

The margin of victory in this case was eight votes, and the irregularities in the election process accounted for twenty-four, which exceeds the margin of victory. Accordingly, to find that the outcome of the election was materially affected, it was not necessary for the trial court to determine how the individual voters voted, and the trial court was not required to follow Peña's proposed formula, which depends on a finding that a percentage of the twenty-four illegal votes went to a certain candidate. *See Gonzalez*, 251 S.W.3d at 782; *Alvarez*, 844 S.W.2d at 242; *Kelley*, 733 S.W.2d at 314 (finding that because the winner of the election won by one vote, that one vote could have changed the outcome of the election regardless of the candidate for whom the illegal voter casts her vote). Therefore, the trial court did not abuse its discretion when it declared the election void. *See Gonzalez*, 251 S.W.3d at 782; *Alvarez*, 844 S.W.2d at 242; *Kelley*, 733 S.W.2d at 314. We overrule Peña's sole issue.

6

## V.    CONCLUSION

We affirm the judgment.

JAIME TIJERINA
Justice

Delivered and filed on the
27th day of April, 2023.