**Zane KIEHNE, Appellant,**

v.

**Thomas E. JONES, Appellee.**

**No. 08–07–00075–CV.**

Court of Appeals of Texas, El Paso.

June 21, 2007.

Susan Hays, Law Office of Susan Hays, P.C., Dallas, for Appellant.

Randall B. Wood, Ray, Wood & Bonilla, L.L.P., Austin, for Appellee.

Before CHEW, C.J., McCLURE, and CARR, JJ.

## *OPINION*

DAVID WELLINGTON CHEW, Chief Justice.

Zane Kiehne, Appellant here and Contestee below, filed this accelerated appeal challenging the trial court's determination of residency for voting purposes of six residents of Loving County, Texas.[1] Appellant asks this Court to overturn the trial court's finding that three of the challenged voters are Loving County residents and are eligible to legally vote in that county, as well as the finding that three other challenged voters are not Loving County residents and, as such, are not eligible to vote in Loving County.

This appeal comes to us from a special election for County Commissioner Precinct Three. Loving County is the smallest county in our jurisdiction, a rural West Texas county bordering a portion of eastern New Mexico.[2] Precinct Three covers the northwestern portion of Loving County that runs along the border with New Mexico. The history and the record reflect that Loving County is no stranger to curious and contested elections. Indeed, the author notes that in the 1994 General Election, the Loving County voters were evenly split, 36 to 36, as they are often wont to be, between the author and his election opponent, the Honorable Julia Vaughn.

In September of 2006, Skeet Jones, County Commissioner Precinct Three, filed to run for County Judge. This, in turn, resulted in a mid-term vacancy for his office. Zane Kiehne (Zane) and Thom-

---

1. Appeals arising out of election contests have precedence in appellate courts. Tex.Elec. Code Ann. § 231.009 (Vernon 2003).

2. http://www.census.gov/p opest/counties/tables/CO–EST2006–01–48.csv

as E. Jones (Jones) both filed as write-in candidates for the vacant position.

Zane and his cousin, Oliver Kiehne, own a large ranch which spreads over parts of Texas and New Mexico. The main headquarters for the Texas part of the ranch is referred to as the Kyle Ranch. Around the time Zane decided to run for commissioner, he deeded out several 2.5 acre portions of his property to various friends and family members. Zane also embarked on a campaign of registering Loving County landholders as voters.

On November 7, 2006, an election was held for the vacant county commissioner position. Zane prevailed over Jones by 1 vote, garnering 26 to Jones' 25 votes. Following the election, Jones filed a petition in the district court contesting the results.[3] His petition alleged that over a dozen of the votes cast were illegal because those voters were not residents of Loving County on the date of the election. According to Jones, these twelve or so votes affected the outcome of the election because those persons voted for Zane. Zane contended that Jones's claims were moot as Zane had already been sworn in as commissioner. He further asserted counterclaims which also challenged the legality of certain votes cast.

A two-day bench trial was held on February 22 and March 14, 2007. At trial, the residency status of most of the registered voters in Loving County was vigorously debated by the parties. On March 14, 2007, the trial court rendered a judgment finding by clear and convincing evidence that irregularities had occurred in the election that materially affected the outcome. Consequently, the trial court voided the prior election and ordered that a new election be conducted.[4] The trial court's order listed by name the thirty challenged voters it found are not residents and not eligible to vote in Loving County, and sixteen others that are residents of Loving County and, therefore, are eligible. Zane filed this appeal and this Court ordered, pursuant to Section 232.016 of the Texas Election Code, that the trial court's judgment be suspended pending the outcome of the appeal. Tex.Elec.Code Ann. § 232.016.

Zane urges this Court to review the trial court's determination of the eligibility of six voters, three who presumably voted for Zane, and three the parties believe voted for Jones.[5] Jones, conversely, argues that even if Zane can show the trial court erred in its decisions on the six voters, the error was harmless. Jones further reasons that this appeal is itself a wasted effort, because the election was already determined to be void, and because there is no way of knowing whether the six challenged voters will vote in the next election.

Mr. Jones has suggested that the case before us is moot and there is agreement by members of the panel that that may be

---

**3.** District courts have exclusive jurisdiction over election contests in county commissioner races. Tex.Elec.Code Ann. § 221.002(a).

**4.** If a trial court finds that the number of illegal votes is equal to or exceeds the number of votes needed to change the outcome of the election, the court is authorized to void the election without attempting to determine how individual voters voted. Tex.Elec.Code Ann. § 221.009(b)(Vernon 2003); *Green v. Reyes*, 836 S.W.2d 203, 209 (Tex.App.-Houston [14th Dist.] 1992, no writ). At trial, the parties

agreed a new election should be held. Zane does not appeal that part of the trial court's judgment.

**5.** Zane also requests that we issue an opinion explaining, for future clarification, what the residency requirements are pursuant to the Texas Election Code. By making this request, Zane is asking this Court to render an advisory opinion, something we lack the jurisdiction to do. *Texas Ass'n of Business v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex.1993).

in so far as future elections; however, a majority of the panel believe that it is historically clear that this case presents an exception to the mootness doctrine as being of the type of case frequently faced in *Loving County*, but likely to be without an adequate remedy in the time that it takes for the justice system to address the situation.

## Standard of Review

■ We review a trial court's determination in an election contest for an abuse of discretion.[6] *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex.App.-Corpus Christi 1993, writ dism'd w.o.j.); *Green,* 836 S.W.2d at 209. A trial court commits an abuse of discretion if its decision is so arbitrary and unreasonable that it rises to the level of a clear and prejudicial error of law. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). In reviewing a court's factual determinations for an abuse of discretion, we may not substitute our judgment for that of the trial judge. *Id.* We give a great deal of deference to the trial court, as the trier of fact, in its determination of both the credibility of the witnesses and the weight of their testimony. *Slusher v. Streater,* 896 S.W.2d 239, 245 (Tex.App.-Houston [1st Dist.] 1995, no writ); *Green,* 836 S.W.2d at 212. Moreover, the trial court possesses the discretion to resolve any conflicts arising from the evidence. *Alvarez v. Espinoza,* 844 S.W.2d 238, 246 (Tex.App.-San Antonio 1992, writ dism'd w.o.j.). Consequently, we may not overturn the trial court's judgment unless it is apparent from the record that the trial court could have reached only one result. *Walker,* 827 S.W.2d at 839–40; *Tiller v. Martinez,* 974 S.W.2d 769, 777 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.).

In an election contest, the trial court's obligation is to ascertain whether the outcome is not a true outcome because, *inter alia,* illegal votes were counted. Tex.Elec. Code Ann. § 221.003(a)(1). An illegal vote is one that is not legally countable. Tex. Elec.Code Ann. § 221.003(b). Here, the trial focused on whether a number of the persons who voted in the election were actually residents of Loving County.

While the trial court made determinations on forty-six voters, this appeal concerns only six particular individuals.

## Residence

The Texas Election Code defines residence as domicile; one's home and fixed place of habitation to which one intends to return after any temporary absence. Tex. Elec.Code Ann. § 1.015(a)(Vernon 2003). It is to be determined in accordance with common-law rules, except as may be defined elsewhere in the code. Tex.Elec. Code Ann. § 1.015(b).

A person does not forfeit residency by leaving the person's home for temporary purposes only. Tex.Elec.Code Ann. § 1.015(c). Likewise, a person does not acquire residency in a place to which the person has come solely for temporary purposes, without the intention of making that place home. Tex.Elec.Code Ann. § 1.015(d).

To qualify as an eligible voter, a person must be a qualified voter the day the person offers to vote, a resident of the territory in which the person desires to vote, and must meet any other legal voting requirements for that particular election. Tex.Elec.Code Ann. § 11.001(a)(1)-(3)(Ver-

---

**6.** Zane urges this Court to review the trial court's judgment using a *de novo* standard of review. He does not, however, point us to any authority, nor have we encountered any, to suggest that any standard other than abuse of discretion is appropriate in an appeal from a trial court's judgment in an election contest.

non Supp.2006). If a person resides on property located in more than one territory, the person can choose in which territory to claim residency. Tex.Elec.Code Ann. § 11.001(b). A qualified voter is a person who is 18 years of age or older, a United States citizen, is not legally mentally incompetent, and not a felon who remains under court supervision, and who is a resident of Texas and a registered voter. Tex. Elec.Code Ann. § 11.002.

The term residence can be difficult to define. *Mills v. Bartlett,* 377 S.W.2d 636, 637 (Tex.1964); *Slusher,* 896 S.W.2d at 243. Its meaning hinges on the circumstances surrounding the person involved and depends in great extent on the present intent of the individual. *Mills,* 377 S.W.2d at 637. Elements to be considered in determining a person's residence include volition, intention, and action. *Id.* One element alone is insufficient to establish residency; there must be a nexus amongst the elements to fix and determine a residence. *Id.* A temporary move does not create a new residence, nor cause the loss of an old one. *Alvarez,* 844 S.W.2d at 247. Evidentiary factors such as presence and intent may be established by conduct such as where a person sleeps and keeps personal belongings such as clothes and furniture. *Id.*

### The Challenged Voters

The trial court found that Alex Baeza, Andre Varela, and Holly Kiehne were not eligible to vote in Loving County and ordered that their names be stricken from the voter roll. We examine the trial court's finding regarding each voter to determine whether the trial court committed an abuse of discretion. *Tiller,* 974 S.W.2d at 777.

### Alex Baeza

Baeza testified that he was born in Chihuahua, Mexico and raised in Jal, New Mexico. He recently gained his United States citizenship and registered to vote in Loving County, Texas. Baeza ranches in Chihuahua, Mexico, works as a ranch hand for Zane in Texas and New Mexico, and also helps out on his father's ranch in Jal. He engages in horse trading on the side. As a result of his varied work activities, Baeza frequently stays in different locations on different nights, including the Kyle Ranch in Loving County. Tonya Rodriguez Kiehne testified that Baeza would sometimes leave a bottle of Crown Royal at the Kyle Ranch and once left a shirt.

Prior to the election, Baeza received 2.5 acres of land from Zane. He had not, at the time of trial, established any kind of housing or structure on that property, but testified that he planned to build horse corrals on the land at some point in the future. He holds a New Mexico driver's license and his cellular telephone has a New Mexico number. Baeza testified that he registered to vote in Loving County because he owned land there and that Zane had suggested to him that he register there.

There is sufficient evidence to permit the trial court to find that Baeza was not a resident of Loving County at the time of the election. Although Baeza owns land and spends time in Loving County, his testimony indicates that he also spends a significant amount of time at his families' ranches in New Mexico and Chihuahua. He does not keep his personal belongings in Loving County and holds a New Mexico driver's license. There is some evidence that Baeza lacked both the intent and action required for residency. Accordingly, we find that the trial court did not abuse its discretion in determining that Baeza was ineligible to vote in Loving County.

## Andre Varela

Varela is the twenty-year-old son of Tonya Rodriguez Kiehne. Varela grew up in Pecos, but began visiting the Kyle Ranch about two or three years ago when his mother began dating Zane. Tonya and Zane recently married. Varela registered to vote in Loving County in September of 2006. His voter registration application shows his physical address as a vacant parcel of land near the Kyle Ranch. His mailing address is in Pecos. According to Varela, he registered to vote in Loving County because he was thinking about moving there one day.

Varela testified that he currently lives in San Angelo. Although he is not presently taking classes, he moved to San Angelo to attend school at Angelo State University. He works in San Angelo at a job that does not allow him the flexibility to both attend classes and work. In order to enroll in classes, he would need to find a different job. His current driver's license lists his San Angelo address.

Although Varela may have expressed the requisite intent, the trial court could have found, on the above facts, that his presence in Loving County is too attenuated to establish residency. Therefore, we find that the trial court did not abuse its discretion in determining that Varela is not a resident of or eligible to vote in Loving County.

## Holly Kiehne

Holly Kiehne testified at the trial telephonically. Holly is Zane's cousin. She testified that she grew up in Midland, Texas and that she has never lived in Loving County. She visited Loving County over a fourth of July holiday and enjoyed being there. Holly, jointly with her sister, received 2.5 acres of land in Loving County from Zane. She registered to vote in Loving County in October of 2006. Her voter registration application lists her residence as the vacant land Zane deeded to her in Loving County. Her mailing address is in Stephenville, Texas.

Holly testified that her job in sales with Smokeless Tobacco requires her to travel throughout Texas, New Mexico, Oklahoma, Louisiana, and Arkansas, promoting their products at places such as rodeos, NASCAR events, state fairs, and the like. She indicated that Loving County would be an appealing place for her to live because most of her promotional events were located either in Texas or New Mexico. Finally, she stated that she intended to move to Loving County in a year and a half when she finished pursuing her master's degree.

The trial court determined that on these facts, Holly was not a resident of Loving County and was, thus, ineligible to vote there. The evidence is sufficient to support this finding. Accordingly, the trial court did not commit an abuse of discretion in finding Holly is not a resident of and is not eligible to vote in Loving County.

## John Carr, Mary Mozelle Jones Carr, and Catherine Carr

The trial court held that Catherine Carr, John Carr, and Mary Mozelle Jones Carr are eligible to vote in Loving County. As the Carrs are a family and their domiciles intertwined, we consider the trial court's determination of their residency statuses together.

John Carr testified that he was born and raised in Levelland, Texas. Levelland is located in Hockley County. He and his wife, Mary Mozelle, own property and homes in both Hockley County and Loving County. Mary Mozelle is originally from Loving County. Appellee Jones is her brother. Mary Mozelle and John married in 1977. Catherine Carr is the adult

daughter of John and Mary Mozelle Jones Carr. John and Mary Mozelle raised their children in Hockley County and have lived there for the past thirty-one years.

In 1995, John and Mary Mozelle put a mobile home on their Loving County property. They registered to vote in Loving County in 1996. Their registration, however, was rejected by the voter registrar, Sheriff Putnam. They contested the rejection in the district court, which overruled the sheriff and allowed John and Mary Mozelle to register to vote in Loving County. John testified at trial that he has kept his registration active since that time and has regularly voted in Loving County elections. He testified that he registered to vote there because he has a home and planned to have a future and retire there. He indicated that he had not registered to vote anywhere other than Loving County since 1995.

John previously farmed and owned a trucking business but currently works as a division manager for a lubricant supply company selling various types of lubricants to businesses in the western portion of Texas. He testified that this activity will mean him spending more time in Loving County in the near future.

During the last eleven years, the Carrs have been making investments in their property in Loving County. They cleared mesquite and planted peach trees and tried to grow different types of grass. They also put in a well for water for cattle and an irrigation system. The Carrs sold their farm in Hockley County, and have placed their Hockley County home on the market.

Mary Mozelle stated that it was their intent to live in Loving County. She is already in Loving County quite a bit, as her parents still live there and she helps her family with their ranch. She reasoned that living in Loving County was a logical choice as her parents were getting older and she and her husband were no longer farming in Hockley County.

Catherine Carr testified about photographs introduced into evidence that show the inside and outside of the Carrs' Loving County mobile home. The photographs show that the inside of the home is fully furnished and decorated. Catherine testified that she lived at the mobile home during the summer when she was not taking college classes, and during that time worked in Loving County. She has considered the Loving County home her residence throughout her schooling. She also testified that between 1997 when she graduated from high school and the time of trial, she had gone to school in different locations, and had held temporary jobs in different locations, including Utah.

Much of the testimony and evidence Zane introduced at trial dealt with John, Mary Mozelle, and Catherine Carr and the state of their mobile home. He brought in tax records for the Carrs' Hockley County home showing they receive a homestead exemption on that property. He introduced a Soil Survey of Loving and Winkler Counties, Texas, published by the United States Department of Agriculture, as evidence that the soil on the Carrs' Loving County property was unsuitable for cultivation, apparently to refute the Carrs' testimony that they are growing fruit trees and grass. To show that the Carrs infrequently visited Loving County, he introduced photographs of their mobile home. He even sent the constable to inspect the outside of the mobile home and check the amount of propane in the tank.

Despite there being some evidence to the contrary, the trial court's finding that the Carrs are residents of Loving County and eligible to vote is supported by some evidence. John and Mary Mozelle both

demonstrated intent and presence. Although there is evidence that the Carrs' Hockley County home is their primary residence, there is also evidence that the Carrs' intent is to make Loving County their permanent home. Catherine Carr also provided evidence of intent and presence. She testified in detail about living in the mobile home and stated that she considered Loving County her residence while she is away at school.

Even if there is conflicting evidence, as long as there is some evidence that supports the trial court's decision, we may not overturn the trial court's ruling. *Tiller*, 974 S.W.2d at 777. There is sufficient evidence here to support the trial court's findings. Therefore, we find that the trial court did not abuse its discretion in determining that John Carr, Mary Mozelle Jones Carr, and Catherine Carr are residents of Loving County and eligible to vote in Loving County.

Because we find that the trial court did not commit an abuse of discretion, we will affirm the judgment of the trial. We make no comment on the eligibility of voters in the rerun election, or on any collateral estoppel issue that may arise in the future.

## CARR, J., Dissenting.

KENNETH R. CARR, Justice, dissenting.

The election results for the November 2006 election show that 51 votes were cast in the election for Loving County Commissioner, Precinct 3, all by write-in. Zane Kiehne received 26 votes and Thomas E. Jones, 25. In the course of Jones' election contest, the trial court found that 30 of those votes, a clear majority, were cast by ineligible voters.[1] Acting pursuant to the authority given it in Tex.Elec.Code Ann. § 221.009(b), the trial court set the election aside and ordered that a new election be conducted. *No party has appealed the Section 221.009(b) portion of the trial court's order.*

By his appeal, Zane seeks, instead, to remove three names (Baeza, Varela, and Holly ("the Kiehne voters"))[2] from the list of voters who were found to have been ineligible in November 2006. The only other affirmative relief which he seeks is a ruling by this Court that three voters found eligible by the trial court should have been found to have been ineligible.[3]

Jones correctly argues that Zane's appeal is moot. If, as Zane urges, the three "Kiehne voters" are added back to the eligibility list as of November 2006, the number of voters found to have been ineligible will be reduced to twenty-seven, a number which is still ample to have changed the outcome of the election.[4]

1. No party has challenged the trial court's determination that twenty-seven of the voters, whose names are specified in the trial court's order, were ineligible to vote in Loving County in November 2006. The trial court's finding as to those individuals' eligibility as of that date is therefore final. Similarly, its unchallenged determination that thirteen others (sixteen, excluding three members of the Carr family discussed below) were eligible is likewise final.

2. Although the trial court found it unnecessary to order any voter to identify under oath the candidate for whom he voted, the parties have assumed that the three "Kiehne voters" voted for Zane, and I will work on that assumption.

3. Zane asks this Court to add three members of the Carr family (husband, wife, and adult daughter) to the list of those whom the trial court found to have been ineligible. I will likewise accept the parties' assumption that all three members of the Carr family voted for Jones, who is Mrs. Carr's brother. (The undersigned is not related to this Carr family.)

4. In a "best case" scenario for Zane (based on the issues he has brought forward to this Court), to wit, deeming the three Kiehne vot-

Given Loving County's history of close and contentious elections, the majority believe that this Court should opine on some of the issues raised in this proceeding, even though they are not necessary for our disposition of this appeal, because the parties will likely be back here after the rerun election.[5] The majority's premise in this regard may well prove correct, but we have no power to speculate about future events, in order to offer our advise to the parties. In *Brownsville Indep. Sch. Dist. Bd. of Trs. v. Brownsville Herald*, 831 S.W.2d 537, 538–39 (Tex.App.-Corpus Christi 1992, no writ), the Court observed:

> Courts are created not for purposes of deciding abstract or academic questions of law or to render advisory opinions, but solely for judicial determination of *presently existing* disputes between parties in which effective judgment can be rendered.

[Emphasis in original](quoted, without supplied emphasis, in *Caddel v. Bright*, No. 08–03–00336–CV, 2004 WL 1172337, at *1 (Tex.App.-El Paso May 25, 2004, no pet.)(not designated for publication)).

Neither party has appealed the trial court's order directing a new election. Therefore, nothing we decide herein regarding the eligibility of the Kiehne voters or the Carr family can affect the results of the 2006 election; by a final and unappealed order of the trial court, those results are null and void. Even more funda-

mentally, nothing we decide today with regard to any *"presently existing"* dispute can have any effect on the future rerun election.

With regard to one's eligibility to vote in Texas, the Legislature has provided:

### § 11.001. Eligibility to Vote

(a) Except as otherwise provided by law, to be eligible to vote in an election in this state, a person must:

    (1) be a qualified voter as defined by Section 11.002 *on the day the person offers to vote;*

    (2) be a resident of the territory covered by the election for the office or measure on which the person desires to vote;

    (3) satisfy all other requirements for voting prescribed by law for the particular election.

(b) For a person who resides on property located in more than one territory described in Subsection (a)(2), the person shall choose in which territory the residence of the person is located.

Tex.Elec.Code Ann. § 11.001 [emphasis added]. Therefore, a person who was ineligible to vote on November 7, 2006, may or may not still be ineligible to vote today.[6] Neither of those facts is determinative of the controlling question, which is whether he *will be* ineligible on the day he offers to vote in the rerun election.

---

ers to have been eligible and deleting the votes of the Carr family members, Zane's lead would have been 26–22.

**5.** This is an obvious effort to invoke the "capable of repetition, yet evading review" exception to the mootness doctrine. The Texas Supreme Court has limited application of this exception to lawsuits which "challenge unconstitutional acts performed by the government." *General Land Office of the State of Texas v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 571 (Tex.1990). No such constitutional chal-

lenges are made in this proceeding. Moreover, if any candidate chooses to contest the results of the rerun election, Texas law provides ample opportunity for him to seek review by way of appeal.

**6.** Of course, the converse is also possible. One who is currently eligible to vote may change his circumstances such that he becomes ineligible to do so by the date of the new election.

To vote in the upcoming election, a person must be an eligible voter in Loving County and a resident[7] of Precinct 3 on the day he offers to vote. Neither this Court nor either of the candidates can predict with assurance who will be eligible to vote at that time.

I respectfully believe that this appeal presents no justiciable issue to this Court. I would therefore dismiss the appeal and return the proceeding to the trial court for further proceedings consistent with its earlier order.

---

7. As defined, *inter alia*, in Section 11.001(b).