ACCEPTED
04-15-00365-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
8/14/2015 4:57:30 PM
KEITH HOTTLE
CLERK

## NO. 04-15-00365-CV

## IN THE FOURTH COURT OF APPEALS

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS

08/14/2015 4:57:30 PM

KEITH E. HOTTLE
Clerk

Raul (Roy) **Morales**,

Appellant

**v.**

Rudy **Segura**,

Appellee

## RUDY SEGURA'S BRIEF

Appeal from:
218th Judicial District Court
Atascosa County, Texas
Hon. David Peeples, Presiding
Cause No. 14-12-1070-CVA

Jose Garza
Martin Golando
Michael P. Moran
**GARZA GOLANDO MORAN, PLLC**
115 E. Travis, Suite 1235
San Antonio, Texas 78205
Telephone (210) 892-8543
Fax (210) 428-6448

*Attorneys for Appellee*

# Table of Contents

Index of Authorities .......................................................iii

Statement of Oral Argument ...........................................1

Issues Presented .........................................................2

Statement of Facts.........................................................3

Summary of the Argument ..............................................9

Argument.....................................................................11

   I.  Standard of Review .................................................12

   II. The trial court properly determined Sheldon Day's
   votes should have been counted .................................13

   III. Section 63.006 does not require a voter to have been
   registered in the voting precinct 30 days before the
   election if the voter actually resides in the precinct....19

   IV. Administrative mistakes by government officials may
   not disenfranchise voters and are prime examples of
   voting irregularities for election contests ....................22

   V.  Conclusion..........................................................24

Prayer ........................................................................25

**Certificate of Compliance**............................................**27**

**Certificate of Service** ...................................................**28**

# Index of Authorities

## Cases

*Alvarez v. Espinosa,* 844 S.W.2d 238 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.) ..................................................................... 13

*Barshop v. Medina Cnty. Underground Water Conservation Dist.,* 925 S.W.2d 618 (Tex. 1996) ........................................................... 18

*Butnaru v. Ford Motor Co.,* 84 S.W.3d 198 (Tex. 2002).................... 12

*Gonzalez v. Villarreal,* 251 S.W.3d 763 (Tex. App.—Corpus Christi 2008, pet. dism'd)............................................................. 12, 17

*Guerra v. Garza,* 865 S.W.2d 573 (Tex. App.—Corpus Christi 1993, writ dism'd w.o.j.) ................................................................ 12

*McCurry v. Lewis,* 259 S.W.3d 369 (Tex. App.—Amarillo 2008, no pet.) ...................................................................................... 14

*Slusher v. Streater,* 896 S.W.2d 239 (Tex. App.—Houston [1st Dist.] 1995, no writ)......................................................................... 13

*Thomas v. Groebl,* 212 S.W.2d 625 (Tex. 1948) ............................ 18

*Tiller v. Martinez,* 974 S.W.2d 769 (Tex. App.—San Antonio 1998, pet dism'd w.o.j.) ........................................................ 13, 14, 23

*Walker v. Packer,* 827 S.W.2d 833 (Tex. 1992) ............................. 13

**Statutes**

Tex. Elec. Code Ann. § 13.143(a) (West 2014) ..............................21

Tex. Elec. Code Ann. § 221.003 (West 2014).......................... 14, 23

Tex. Elec. Code Ann. § 232.014(e) (West 2014) ...........................25

Tex. Elec. Code Ann. § 232.015 (West 2014)................................25

Tex. Elec. Code Ann. § 232.016 (West 2014)................................25

Tex. Elec. Code Ann. § 63.006 (West 2011).................................15

Tex. Elec. Code Ann. § 63.006 (West 2014)..........................passim

**Other Authorities**

Wikipedia, *Three Wishes Joke* (last updated April 5, 2015)............11

## Statement of Oral Argument

This case is unremarkable in the issues it presents, and oral argument would be of little value in the Court's review of the trial court's judgment. Contrary to what Morales claims, the Court can easily understand from the record and the parties' briefs why Sheldon Day's vote was wrongfully rejected.

## Issues Presented

Appellant has posed five related questions as issues before this Court. Appellee believes there are only two issues involved here:

1.    Was the trial court's construction of Texas Election Code section 63.006 a liberal interpretation in favor of the right to vote?

2.    In applying Texas Election Code section 63.006 to the facts of this case, did the trial court have some evidence reasonably supporting its decision?

**Statement of Facts**

Appellant, Raul Morales, has offered a slanted and abbreviated statement of facts. Appellee, Rudy Segura, offers this more developed and balanced description of the facts of the case for the benefit of this Court's analysis.

The City of Jourdanton ("Jourdanton") is located wholly within Atascosa County. (Supp. CR 4.) Jourdanton held a general election on November 4, 2014. (Supp. CR 4.) On the ballot for the general election were two at-large city council positions. (Supp. CR 4.)

Jourdanton uses a cumulative (or plurality) voting system for purposes of electing city councilmembers. (Supp. CR 4-5.) Each voter has two votes. A voter may cast two votes for one candidate, cast one vote for one candidate and one vote for another candidate, cast only one vote, or cast no vote. (Supp. CR 4-5.) In this election, the candidate with the most votes and the candidate with the second most votes are elected to the city council positions. (Supp. CR 5.)

The candidates for this election were Rudy Segura (appellee), Raul (Roy) Morales (appellant), Robert (Doc) Williams, and Robert

Herrera, Jr. (Supp. CR 5.) The first set of results for the election were as follows:

| Candidate | Votes | % |
|---|---|---|
| Rudy Segura | 363 | 27.65% |
| Robert "Doc" Williams | 453 | 34.50% |
| Raul (Roy) Morales | 364 | 27.72% |
| Robert Herrera Jr. | 133 | 10.13% |

(Supp. CR 5.) Segura lost by one vote. (Supp. CR 5.)

On November 20, 2014, Susan B. Netardus, the mayor of Jourdanton, ordered the ballot boxes opened and the ballots recounted. (Supp. CR 5.) The recount resulted in two more votes for Williams, bringing his total to 455 votes. (Supp. CR 5.) The other candidates did not gain or lose any votes. (Supp. CR 5.)

On December 2, 2014, the Jourdanton City Council canvassed the election. (Supp. CR 6.) The council certified that Williams and Morales were the winners of the council elections. (Supp. CR 6.) This election contest, challenging the results of the election, was filed on December 31, 2014. (CR 5.)

Trial in this cause was held on June 8, 2015. (RR 1.) At trial

4

Segura established that Sheldon Day had been a resident of Jourdanton since May 2014. (RR 28-29.) Day moved that month to Jourdanton from another city in Atascosa County. (RR 28-29, 78.) In June 2014, well ahead of election season, Day went to the Texas Department of Public Safety (DPS) office in Jourdanton, changed his address on his driver license, and asked that his voter registration information be changed to reflect his new address. (RR 29, 40-41.) In fact, Day's provisional ballot for the election showed that his identification was updated on July 17. (RR 150, Contestant's ex. 10.)

On October 20, 2014, Day went to the Atascosa County early voting location to vote in the November 2014 elections, including the Jourdanton City Council election. (RR 30.) Day presented his new driver license (a valid Texas voter ID) at the early voting location, showing that he lived in Jourdanton, and asked to be allowed to vote in the City Council election. (RR 30.)[1] **The election officers at the voting location verified that Day was a registered**

---

[1] A copy of Day's driver license was admitted into evidence. (RR 143, Contestant's ex. 2.) The license shows it was issued on October 20, 2014. This license was issued when Day went to DPS the second time to change his voting address. However, Day's July license, which was presented to election officers, included his Jourdanton address and was identical to his October license

5

**voter in Atascosa County.** (RR 30-31, 91-92.) Day was never instructed by the election officers to retrieve his voter registration card because his status as a registered voter of Atascosa County was not in question. (*See* RR 33.)[2] Atascosa County Elections Administrator Janice Ruple testified that Day was a registered voter for the election and that the election officers at the early voting location knew from their records he was a registered voter in Atascosa County when he attempted to vote. (RR 74, 91-92). Day testified that he still had his old voter registration certificate and had the election officers requested Day show them it, he would have done so. (RR 33.)

Day was allowed to cast a ballot in the general election but not in the Jourdanton City Council election. (RR 31-32.) An election officer at the early voting location told Day to have DPS change his address for voter registration purposes. (RR 32.) Day obeyed, went to DPS again, changed his address for voting purposes again, and

---

except for the issue date. (RR 33-35.)

[2] It makes sense that Day would not have brought his voter registration certificate. The Texas Voter ID law has effectively rendered the certificate nugatory. Voters are no better off if they bring it because election officers can independently verify their registration. (RR 77-78.) The ID is all that matters. In fact, had Day brought his old certificate, Atascosa election officers would still have wrongly prohibited him from voting. (*See* RR 85-86.)

still as of the day of trial, had not received an updated voter registration certificate. (RR 32-35, 41.) Tellingly, Ruple, the elections administrator, said that she did not know whether Day had instructed DPS to change his voting address. (RR 89.) Ruple could not tell from her records whether DPS made an error or not. (RR 89, 91.)[3]

Day was given a provisional ballot, the only option election officers offered him. (RR 32.) Not even Ruple knew about the affidavit of residence option under section 63.006. (*See* RR 94.) She said election officers only offered to voters the statement of residence (section 63.0011) and a provisional ballot (section 63.009). (RR 94.)

Day cast the provisional ballot, giving his two votes to Segura. (RR 36, 114.) In order to cast the provisional ballot, Day had to complete an affidavit swearing to substantially all the facts required under section 63.006. (*See* RR 142, Contestant's ex. 1.) Day did not

---

[3] Segura takes issue with Morales's statement that Ruple was able to ascertain that Day never changed his voter registration address. Appellant's Br. 2 (July 27, 2015). This is simply not supported by the record. Ruple testified that her computer records *indicated* he had not. But computer records can be inaccurate because of human error. If DPS had failed to update Segura's address, of course her computer records would indicate he was still registered at his old address, leading to Ruple's mistaken assumption that he had never

vote in the local elections held where he used to live in Atascosa County. (RR 113.) The only local election he voted in was that held by Jourdanton. (RR 113.) His provisional ballot was rejected by election officials. (CR 23; RR 85.) If the votes cast by Day had been counted, Segura would have been a winner, beating Morales by one vote. (RR 139-40.)

After submission of the evidence, the trial court ruled that Day's votes should have counted and determined that the true outcome of the City Council election was as follows:

| Candidate | Votes | % |
|---|---|---|
| Rudy Segura | 365 | 27.71% |
| Robert "Doc" Williams | 455 | 34.55% |
| Raul (Roy) Morales | 364 | 27.64% |
| Robert Herrera Jr. | 133 | 10.10% |

The trial court declared Segura a winner. (RR 140.)

changed his address.

## Summary of the Argument

This case is about whether, in protecting the right to vote, courts will depart from precedent and now elevate form over substance. Morales, appellant, wants form to triumph. Segura, appellee, wants substance and the right to vote to prevail. In 2011, the Texas Legislature required all voters to establish their identity with proper photo identification. In the 2011 amendments, the Texas legislature permitted a voter who is registered in a county to vote in the precinct of his new residence, even if election records indicate the voter is registered in another precinct within the county. *See* Tex. Elec. Code Ann. § 63.006(a) (West 2014). Voter Sheldon Day, frustrated by his efforts to modify his registration residence, is exactly the voter contemplated by section 63.006, and he was entitled to cast a regular ballot.

Moreover, Day did all he could to qualify for the Jourdanton City Council election. Administrative mistakes led to his registration residence not being updated. Administrative mistakes should not be used to disenfranchise voters. Day properly registered in Jourdanton and his votes should have been counted in the 2014

Jourdanton election.

## Argument

Morales argues that voter Sheldon Day should have brought his voter registration certificate, even though this would have been a pointless act (as the head election official testified at trial), because it is what the statute literally says. In addition, Morales argues that there is truly a difference between checking a box on a form and telling a clerk to check the box. The former is the correct way and the latter is void. This mindset of interpreting human actions and words is best left to the "three wishes joke" from various stories and commercials, in which a genie literally interprets wishes to the disappointment of the wisher. Wikipedia, *Three Wishes Joke* (last updated April 5, 2015)[4].

Literal interpretations may be funny in the context of stories but they are not funny when the right to vote is on the line. Statutes regulating the right to vote should be given a liberal interpretation in favor of that right. This rule of construction, to avoid depriving individuals of their franchise, applies as well to registration laws as to other laws regulating voting. The trial court's

---

[4] Available at https://en.wikipedia.org/wiki/Three_wishes_joke

interpretation and application of section 63.006 is consistent with this rule of construction.

## I. Standard of Review

A trial court's determination in an election contest is reviewed for an abuse of discretion. *Guerra v. Garza,* 865 S.W.2d 573, 576 (Tex. App.—Corpus Christi 1993, writ dism'd w.o.j.). In determining whether there has been an abuse of discretion concerning legal or factually sufficiency, courts of appeal engage in a two-pronged approach: (1) did the trial court have sufficient information upon which to exercise its discretion and (2) did the trial court err in its application of discretion? *Gonzalez v. Villarreal,* 251 S.W.3d 763, 774 n.16 (Tex. App.—Corpus Christi 2008, pet. dism'd). An abuse of discretion does not occur if some evidence reasonably supports the trial court's decision. *Butnaru v. Ford Motor Co.,* 84 S.W.3d 198, 211 (Tex. 2002). In reviewing a court's factual determinations for an abuse of discretion, the reviewing court may not substitute its judgment for that of the trial judge. *Id.* A great deal of deference should be given to the trial court as the trier of fact in its

determination of both credibility of witnesses and the weight of the testimony. *Slusher v. Streater*, 896 S.W.2d 239, 245 (Tex. App.—Houston [1st Dist.] 1995, no writ). In addition, the trial court should be given discretion to resolve any conflicts arising from the evidence. *Alvarez v. Espinosa*, 844 S.W.2d 238, 246 (Tex. App.—San Antonio 1992, writ dism'd w.o.j.). The trial court's judgment should not be overturned unless it is apparent from the record that the court could have reached only one result. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992); *Tiller v. Martinez*, 974 S.W.2d 769, 777 (Tex. App.—San Antonio 1998, pet dism'd w.o.j.).

## II. The trial court properly determined Sheldon Day's votes should have been counted

Sheldon Day's votes should have been counted. Day presented proper photo ID, Day was registered to vote in Atascosa County. He proved that he resided in Jourdanton, and he would have executed the required affidavit.

To challenge an election, the contestant has the burden of proving by clear and convincing evidence that voting irregularities materially affected the election results. *Tiller*, 974 S.W.2d at 772;

*see* Tex. Elec. Code Ann. § 221.003 (West 2014). The outcome of an election is "materially affected" when a different and correct result would have been reached in the absence of irregularities. *McCurry v. Lewis*, 259 S.W.3d 369, 373 (Tex. App.—Amarillo 2008, no pet.). To overcome this burden, the contestant must show that illegal votes were counted or **an election official prevented eligible voters from voting, failed to count legal votes, or engaged in** other fraud, **illegal conduct, or mistake**. *Tiller*, 974 S.W.2d at 772; Tex. Elec. Code Ann. § 221.003(a) (West 2014).

An election official prevents an eligible voter from voting, fails to count legal votes, engages in illegal conduct, or makes a mistake when the official refuses to permit a voter who can meet the requisites of Texas Election Code section 63.006(a) to vote. This section provides that a voter who is not listed on the precinct list of registered voters but who nonetheless resides in the precinct and is registered in the county is eligible to vote and must be accepted for voting if the voter executes an affidavit of residency. *Id.* § 63.006(a). This provision of the election code was amended in 2011 and was in effect in the 2014 Jourdanton City Council election. Before the amendment, section 63.006 read in pertinent part as follows:

a voter who, when offering to vote, presents a voter registration certificate indicating that the voter is currently registered in the precinct in which the voter is offering to vote, but whose name is not on the precinct list of registered voters, shall be accepted for voting.

Tex. Elec. Code Ann. § 63.006 (West 2011). As can be seen, the voter had to prove registration in the voting precinct. After the amendment the pertinent part of the statute reads as follows:

A voter who, when offering to vote, presents [proper photo ID] but whose name is not on the precinct list of registered voters shall be accepted for voting if the voter also presents a voter registration certificate indicating that the voter is currently registered:

(1) in the precinct in which the voter is offering to vote; or
(2) **in a different precinct in the same county as the precinct in which the voter is offering to vote and the voter executes an affidavit stating that the voter**:

(A) **is a resident of the precinct in which the voter is offering to vote** or is otherwise entitled by law to vote in that precinct;
(B) was a resident of the precinct in which the voter is offering to vote at the time the information on the voter's residence address was last provided to the voter

15

registrar;

(C) did not deliberately provide false information to secure registration in a precinct in which the voter does not reside; and

(D) is voting only once in the election.

Tex. Elec. Code Ann. § 63.006(a) (West 2014) (emphasis added). The changes to section 63.006 authorize a voter to vote in a precinct different from the one that is designated on his registration card and in county records so long as it is established that he is in fact registered in the county and that he is a resident of the precinct in which he seeks to vote.

It is not disputed that Sheldon Day lived in Jourdanton since May 2014. It is not disputed that Day presented proper photo ID at the polls, and it is not disputed that the ID clearly established his residence in Jourdanton since July 2014. **Most important, it is not disputed that Day was registered to vote in Atascosa County.** Day qualified for voting in Jourdanton under section 63.006.

Morales argues that section 63.009 applies, not 63.006. Morales claims that whether 63.006 or 63.009 applies turns on whether the voter brings the voter's certificate to the polling location.

Appellant's Br. 5-6 (July 27, 2015). But Morales stops there. He does not take the next step of asking what the purpose of bringing the certificate is. Why would the Texas Legislature require a voter to do this? Since the voter was omitted from the precinct list of registered voters, election officers cannot verify the voter is registered. Accordingly, the reason for requiring the voter to bring the voter's certificate is that the certificate proves the voter is registered. *See e.g., Gonzalez*, 251 S.W.3d at 780 (citing Tex. Elec. Code Ann. § 63.009(b) (West 2011) (Before the voter ID law, if a voter arrived without a certificate and the voter's name was not on precinct list, an election clerk was authorized to contact the voter registrar to determine if the voter was registered and accept the voter for voting.).

Morales's construction of section 63.006 runs counter to statutory rules of construction of election provisions. As the Texas Supreme Court long ago determined:

> The right to vote is so fundamental in our form of government that it should be as zealously safeguarded as are our natural rights. It has been said that 'laws abridging the natural right of the citizen should be restrained by rigorous constructions within their narrowest limits.' It

17

is sufficient, however, that we apply here the less extreme and **well established rule of construction that statutes regulating the right to vote should be given a liberal interpretation in favor of that right**.

*Thomas v. Groebl*, 212 S.W.2d 625, 630 (Tex. 1948) (emphasis added).

The trial court determined that the provision requiring the registration certificate was directive not mandatory. Its purpose was fulfilled because everyone acknowledged that Day was registered in Atascosa County and a registration certificate was not required in order to cast a vote. The court's interpretation is consistent with the rules of election law construction. First, such construction favors enfranchising the voter. Second, it avoids a too literal construction that would prevent the enforcement of its true intent. The Texas Supreme Court "has recognized that [a] too literal construction of a statute, which would prevent the enforcement of it according to its true intent, should be avoided." *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 629-30 (Tex. 1996) (internal quotation marks omitted).

Here no one disputed Day's registration in the County.

Similarly, no one disputes that the County's records indicated he was registered in a precinct different from the one he sought to vote in. Section 63.006 requires that a voter be permitted to vote where a voter presents the proper ID but is shown to be registered "in a different precinct in the same county as the precinct in which the voter is offering to vote and the voter executes an affidavit." Tex. Election Code Ann. § 63.006(a) (West 2014). Thus, Day qualified for voting in the Jourdanton City Council election and should have been permitted to vote.

## III. Section 63.006 does not require a voter to have been registered in the voting precinct 30 days before the election if the voter actually resides in the precinct

Morales argues that in order to be accepted for voting under section 63.006, a voter must have been registered 30 days before the election in the voting precinct. However, section 63.006 does not require 30-day registration, and it would not make sense, when considering the language of 63.006, to impose such a requirement.

Nothing in 63.006 requires a voter to have been registered 30 days before the election in the voting precinct. In fact, the plain

language of 63.006 excludes any such requirement. The key language is in 63.006(a)(2)(A):

> A voter who, when offering to vote, presents [proper photo ID] but whose name is not on the precinct list of registered voters shall be accepted for voting if the voter also presents a voter registration certificate indicating that the voter is currently registered: . . . in a different precinct in the same county as the precinct in which the voter is offering to vote and the voter executes an affidavit stating that the voter:
>
> (A) **is a resident of the precinct in which the voter is offering to vote or is otherwise entitled by law to vote in that precinct**;

Tex. Elec. Code Ann. § 63.006(a)(2)(A) (West 2014) (emphasis added). There are two ways to satisfy subsection (a)(2)(A). One is to be a resident of the voting precinct (no 30-day requirement) and affirm so under oath. The other is to otherwise be entitled to vote (where the 30-day requirement would come into play) and affirm so under oath. Under this language, since Day met the first requirement, he was not required to be "otherwise entitled by law to vote" in the precinct.

Additionally, the statutory provision Morales cites for the 30-

day requirement applies to registration only. The provision provides that an approved voter registration application becomes effective the 30th day after the date the application was submitted. *Id.* § 13.143(a). Day was already registered to vote in Atascosa County more than 30 days before the election. He merely wanted to change his voting address to a different precinct. Thus, the 30-day provision does not apply.

Morales ushers a parade of horribles to scare the Court into legislating a 30-day registration requirement. Nomadic bands of mischievous voters will descend on small towns like Jourdanton the day before the election, demand to vote under section 63.006, and destroy the integrity of their elections. The same sort of argument was presented to the trial court by Morales and rightfully rejected. (*See* RR 137-38.)

First, it should be noted there is not even a whiff of voter fraud in this case. Day did not intend to vote twice, and he did not vote twice. He never attempted to vote in the local elections where he was previously registered. The only local election he voted in was Jourdanton (by a provisional ballot).

To Morales's slippery slope hypothetical, Segura has a one

word response: perjury. In order to vote under 63.006, a voter has to swear that the voter is a resident of the voting precinct. *Id.* § 63.006(a)(2)(A). Under Morales's grim hypothetical, these bands of voters would be lying under oath because they did not have "any intention of remaining within that jurisdiction or establishing residency there." Appellant's Br. 6 (July 27, 2015). These voters would be easily found by consulting the poll list and the registration omissions list. *See* Tex. Elec. Code Ann. § 63.006(b) (West 2014). Thus, there are no floodgates for this Court to inadvertently open when only a raindrop has fallen.

## IV. Administrative mistakes by government officials may not disenfranchise voters and are prime examples of voting irregularities for election contests

Even if the Court determines that Sheldon Day was required to be registered in Jourdanton 30 days before the election, he would have been had DPS performed its duty. Day told a DPS clerk that he wanted to change his voter registration address. However, the clerk, or some other agent of DPS, failed to update his address for that purpose.

One ground for an election contest is when an eligible voter is prevented from voting by the mistake of an election official. *Tiller*, 974 S.W.2d at 772; Tex. Elec. Code Ann. § 221.003(a) (West 2014). The administrative mistakes in this case are as follows: (1) the DPS clerk failed to update Day's voter registration, (2) election officials failed to send an updated voter registration certificate to Day, and (3) the election official failed to inform Day that he could vote under section 63.006 with his old certificate.

From the facts presented to the trial court, it could conclude that there was clear and convincing evidence that an administrative mistake robbed Day of his vote in the Jourdanton City Council election. The trial court heard Day's testimony that he moved to Jourdanton around May 2014. Day directed a DPS clerk to update his registration. Through an administrative mistake on the part of DPS, he never received a new voter certificate for the November 2014 election. Day went to vote in the Jourdanton City Council elections the first day of early voting. He was not told by election officials that he could cast a ballot using his old certificate. He was sent back to DPS to get a new voter certificate. As of the trial date, he had yet to receive an updated certificate. The trial court even

23

inspected the provisional ballot cast by Day showing two votes for Segura, bolstering Day's credibility. Given that there was strong evidence of an administrative mistake, the trial court did not abuse its discretion.

## V.    Conclusion

Sheldon Day's votes should have been counted for two independent reasons. First, he satisfied section 63.006. Second, his attempts to change his voter registration address were thwarted by an administrative mistake. The trial court properly evaluated the evidence and correctly applied the appropriate law. Its judgment should be affirmed.

**Prayer**

Segura prays that the Court deny oral argument, affirm the trial court's judgment, order that Segura immediately take office, and grant all other relief it deems appropriate.

Segura has not been allowed to assume his position on the Council. *See* Tex. Elec. Code Ann. § 232.016 (West 2014). The election was in November 2014. This Court has properly proceeded with this cause on an expedited schedule. In light of the delay in having the true winner of the election take his position on the City Council and since the issue before this Court is straightforward, Segura further requests that this Court, under Tex. Elec. Code section 232.014(e), refuse to accept any motion for rehearing or reduce the time for filing any such request for rehearing in the event the Court does not order that Segura immediately take office. Tex. Elec. Code Ann. § 232.014(e) (West 2014); *See id.* § 232.015 ("[An] appellate court may accelerate the appeal in a contest of a general . . . election in a manner consistent with the procedures prescribed by Section 232.014.").

DATED: August 14, 2015

Respectfully submitted,

*/s/ Jose Garza*

JOSE GARZA
Texas Bar No. 07731950
garzpalm@aol.com

MARTIN GOLANDO
Texas Bar No. 24059153
martin.golando@gmail.com

MICHAEL P. MORAN
Texas Bar No. 24092857
michael@ggmtx.com

**GARZA GOLANDO MORAN, PLLC**
115 E. Travis, Ste. 1235
San Antonio, Texas 78205
(210) 892-8543
fax: (210) 428-6448

Attorneys for Appellee, Rudy Segura

## Certificate of Compliance

I certify that this document was produced on a computer using Microsoft Word 2011 and contains 4,246 words, as determined by the computer software's word count function, excluding the sections of the document listed in Texas Rule of Appellate Procedure 9.4(i)(1).

*/s/ Michael P. Moran*

27

## Certificate of Service

I certify that on August 14, 2015, I served a copy of this document on the parties listed below by electronic service and that the electronic transmission was reported as complete:

KEITH A. KENDALL
kkendall@dtrglaw.com

FRANK J. GARZA
fgarza@dtrglaw.com

*/s/ Michael P. Moran*